**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

U.S. Court of Appeals Case No.
15-55563

PRESLIE HARDWICK,

Plaintiff – Appellee

vs.

COUNTY OF ORANGE,

Defendant
and

MARCIA VREEKEN, et al.,

Defendants – Appellants

On Appeal from the United States District Court
for the Central District of California,
(District Court No. SACV 13-1390 JLS (ANx))
The Hon. Josephine L. Staton, Judge Presiding

**DEFENDANTS'/APPELLANTS' MARCIA VREEKEN'S,
ELAINE WILKINS', AND THE ESTATE OF HELEN
DWOJAK'S OPENING BRIEF**

Norman J. Watkins, Esq. [SBN 87327]
Pancy Lin, Esq. [SBN 239684]
LYNBERG & WATKINS,
A Professional Corporation
1100 Town & County Road, Suite 1450
Orange, California 92868
Tel: (714) 937-1010
Fax: (714) 937-1003
**Attorneys for Defendant County of Orange, and
Defendants/Appellants Marcia Vreeken, Elaine Wilkins,
and The Estate of Helen Dwojak**

**<u>TABLE OF CONTENTS</u>**

I.   STATEMENT OF JURISDICTION ....................................................1

II.  ISSUES PRESENTED FOR REVIEW ............................................1

III. STATEMENT OF THE CASE ..........................................................2

    A.    Statement of Facts ..................................................................3

    B.    Procedural Background ........................................................16

IV.  SUMMARY OF THE ARGUMENT ................................................18

V.   ARGUMENT....................................................................................21

    A.    Marcia Vreeken, Elaine Wilkins, and Helen Dwojak are entitled to qualified immunity..........................................................................21

        1.    Collateral Estoppel does not Bar Defendants from Asserting Qualified Immunity Here.......................................................27

        2.    This Court has Held that Plaintiff's Fourteenth Amendment Claim was *Not Clearly Established* at the Time of the Incident in this Case. ................................................................33

        3.    There was no well-established law giving Marcia Vreeken, Elaine Wilkins, and Helen Dwojak fair warning that their seizure of Plaintiff pursuant to a court order was unconstitutional under the Fourth Amendment. .......................35

    B.    Marcia Vreeken, Elaine Wilkins, and Helen Dwojak are entitled to absolute immunity for performing quasi-prosecutorial and quasi-judicial functions before the Juvenile Court..............................................42

VI.  CONCLUSION..................................................................................49

CERTIFICATE OF COMPLIANCE WITH  FED. R. APP. 32(a)(7)(c) AND CIRCUIT RULE 32-1 ................................................................................i

STATEMENT OF RELATED CASES .................................................. ii

CERTIFICATE OF SERVICE ................................................................................. iii

# <u>TABLE OF AUTHORITIES</u>

## Cases

<u>Baker v. McCollan</u>, 443 U.S. 137 (1979) ........................................................ 19, 21

<u>Beltran v. Santa Clara County</u>, 514 F.3d 906 (9th Cir. 2008) (en banc) ......... 20, 43

<u>Blankenhorn v. City of Orange</u>, 485 F.3d 463 (9th Cir. 2007) ...................... 19, 26

<u>Brewster v. Bd. of Educ.</u>, 149 F.3d 971 (9th Cir. 1998) .................................. 20, 26

<u>Briley v. City of Hermosa Beach</u>, No. CV 05-8127 AG (SHx), 2008 U.S. Dist.

LEXIS 87571 (C.D. Cal. Sept. 29, 2008) ............................................................. 25

<u>Briscoe v. LaHue</u>, 460 U.S. 325 (1983) .................................................................. 48

<u>Broam v. Bogan</u>, 320 F.3d 1023 (9th Cir. 2003) ............................................... 20, 46

<u>Burns v. Reed</u>, 500 U.S. 478 (1991) ....................................................................... 45

<u>Butz v. Economou</u>, 438 U.S. 478 (1978) ................................................................ 26

<u>Byrd v. Guess</u>, 137 F.3d 1126 (9th Cir. 1998) ....................................................... 30

<u>Cal. Hosp. v. Maxwell-Jolly</u>, 188 Cal. App. 4th 559 (2010) ................................ 29

<u>City & County of S.F. v. Sheehan</u>, 135 S. Ct. 1765 (2015) ................ 23, 24, 25, 35

<u>Costanich v. Dep't of Soc. & Health Servs.</u>, 627 F.3d 1101 (9th Cir. 2009) 17, 18, 32, 33, 34

<u>Coverdell v. Dep't of Soc. & Health Servs.</u>, 834 F.2d 758 (9th Cir. 1987) .... 44, 47

<u>Dela Cruz v. Kauai County</u>, 279 F.3d 1064 (9th Cir. 2002) ................................. 24

Demoran v. Witt, 781 F.2d 155 (9th Cir. 1985) ............................................... 20, 43

Devereaux v. Perez, 218 F.3d 1045 (9th Cir. 2000) ................................................ 38

Dock v. State of Nev., 2010 WL 5441642 (D. Nev. 2010) .................................... 47

Dornheim v. Sholes, 430 F.3d 919 (8th Cir. 2005) ................................................. 48

Edwards v. City of Goldsboro, 178 F.3d 231 (4th Cir. 1999) ............................... 39

Forrester v. White, 484 U.S. 219 (1988) ................................................................. 43

Greene v. Camreta, 588 F.3d 1011 (9th Cir. 2009) .................................... 37, 38, 40

Habiger v. City of Fargo, 905 F. Supp. 709 (D.N.D. 1995) ................................... 36

Hammer v. Gross, 932 F.2d 842 (9th Cir. 1991) (en banc) ................................... 36

Harlow v. Fitzgerald, 457 U.S. 800 (1982) ...................................................... 21, 23

Hope v. Pelzer, 536 U.S. 730 (2002) ................................................................ 23, 35

Huber v. Jackson, 175 Cal. App. 4th 663 (2009) ................................................... 30

Hunter v. Bryant, 502 U.S. 224 (1991) (per curiam) ............................................. 22

In re Marriage of Smith, 225 Cal. App. 3d 469 (1990) ............................................ 3

Johnson v. Cty. of L.A., 340 F.3d 787 (9th Cir. 2003) .......................................... 22

Kalina v. Fletcher, 522 U.S. 118 (1997) ................................................................ 46

Kennedy v. Ridgefield City, 439 F.3d 1055 (9th Cir. 2006) .................................. 19

Krainski v. State ex rel. Bd. of Regents, 616 F.3d 963 (9th Cir. 2010) ............... 25

Lee v. City of L.A., 250 F.3d 668 (9th Cir. 2001) ................................................. 30

Lum v. Jensen, 876 F.2d 1385 (9th Cir. 1989) ...................................................... 41

Lynch v. City of Bos., 180 F.3d 1 (1st Cir. 1999) ................................................. 39

Malley v. Briggs, 475 U.S. 335 (1986) ................................................. 20, 26, 27, 42

Marshall v. County of San Diego, 238 Cal. App. 4th 1095 (2015) ....................... 41

Masoud v. County of San Joaquin, No. CIV. S-06-1170 FCD EFB, 2006 U.S. Dist.

LEXIS 81828, 2006 WL 325179 (E.D. Cal. Nov. 8, 2006) ................................. 20

Mattos v. Agarano, 661 F.3d 433 (9th Cir. 2011) ................................................. 27

McInnes v. California, 943 F.2d 1088 (9th Cir. 1991) .......................................... 27

Mendoza v. City of W. Covina, 206 Cal. App. 4th 702 (2012) ............................. 23

Meyers v. Contra Costa Cty. Dep't of Soc. Servs., 812 F.2d 1154 (9th Cir. 1987)  20, 43, 44

Miller v. Davis, 521 F.3d 1142 (9th Cir. 2008) ...................................................... 2

Miller v. Gammie, 335 F.3d 889 (9th Cir. 2003) (en banc) .................................. 44

Milstein v. Cooley, 257 F.3d 1004 (9th Cir. 2001) .................................. 20, 45, 46

Mireles v. Waco, 502 U.S. 9 (1991) (per curiam) ................................................ 44

Mitchell v. Forsyth, 472 U.S. 511 (1985) .............................................................. 1

Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365 (9th Cir. 1998) ......... 30

<u>Multi Denominational Ministry of Cannabis & Rastafari, Inc. v. Gonzales</u>, 474 F.

Supp. 2d 1133 (N.D. Cal. 2007) ............................................................ 30

<u>Nunez v. Davis</u>, 169 F.3d 1222 (9th Cir. 1999) ................................................ 2, 22

<u>Ohio Civil Serv. Employees Asso. v. Seiter</u>, 858 F.2d 1171 (6th Cir. 1988) ........ 39

<u>Pac. Tel. & Tel. Co. v. San Francisco</u>, 197 Cal. App. 2d 133 (1961) ................... 29

<u>Pajaro Valley Water Mgmt. Agency v. McGrath</u>, 128 Cal. App. 4th 1093 (2005)  29

<u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322 (1979) ........................................... 28

<u>Porter v. Osborn</u>, 546 F.3d 1131 (9th Cir. 2008) ................................................. 31

<u>Puliafico v. County of San Bernardino</u>, 42 F. Supp. 2d 1000 (C.D. Cal. 1999) ... 27

<u>Ramirez v. County of L.A.</u>, 397 F. Supp. 2d 1208 (C.D. Cal. 2005) ................... 40

<u>Reynolds v. County of San Diego</u>, 84 F.3d 1162 (9th Cir. 1996) ........................ 26

<u>Rippy v. Hattaway</u>, 270 F.3d 416 (6th Cir. 2001) ................................................ 46

<u>Robinson v. Solano County</u>, 278 F.3d 1007 (9th Cir. 2002) ................................ 36

<u>Roos v. Red</u>, 130 Cal. App. 4th 870 (2005) ......................................................... 28

<u>Saucier v. Katz</u>, 533 U.S. 194 (2001) .............................. 19, 22, 23, 24, 25, 26, 35

<u>Savard v. Rhode Island</u>, 338 F.3d 23 (1st Cir. 2003) (en banc) .......................... 36

<u>Smith v. ExxonMobil Oil Corp.</u>, 153 Cal. App. 4th 1407 (2007) ........................ 28

<u>Snell v. Tunnell</u>, 920 F.2d 673 (10th Cir. 1990) ............................................. 39, 40

Somers v. Thurman, 109 F.3d 614 (9th Cir. 1997) ................................. 42

Tamas v. Dep't of Soc. & Health Servs., 630 F.3d 833 (9th Cir. 2010)  18, 20, 43, 45, 47, 48

U.S. Golf Ass'n v. Arroyo Software Corp., 69 Cal. App. 4th 607 (1999)  ............ 30

United States v. Lefkowitz, 618 F.2d 1313 (9th Cir. 1980)  .................................. 40

Valley View Health Care, Inc. v. Chapman, 992 F. Supp. 2d 1016 (E.D. Cal. 2014)

................................................................................................................. 30

Vandenberg v. Superior Court, 21 Cal. 4th 815 (1999) ......................................... 28

Waltz v. USDA, 251 F.R.D. 491 (E.D. Cal. 2008) ................................................. 29

Whitaker v. Garcetti, 486 F.3d 572 (9th Cir. 2007)  ............................................... 38

White Motor Corp. v. Teresinski, 214 Cal. App. 3d 754 (1989) .......................... 28

Wilkinson v. Torres, 610 F.3d 546 (9th Cir. 2010)  ................................................ 31

Will v. Hallock, 546 U.S. 345 (2006)  ...................................................................... 1

Wilson v. Layne, 526 U.S. 603 (1999)  ........................................................... 39, 41

**Statutes**

28 U.S.C. § 1291 (2012)  ........................................................................................... 1

28 U.S.C. § 1331 (2012)  ........................................................................................... 1

42 U.S.C. § 1983 (2012)  ........................................................... 1, 2, 3, 15, 17, 21

Cal. Evid. Code § 730 ........................................ 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15

**Other**

Fed. R. App. P. 4 ..................................................................................... 1

## I.  STATEMENT OF JURISDICTION

This action is a civil action of which the district court had original jurisdiction under 28 U.S.C. § 1331.  Specifically, Plaintiff's Complaint seeks relief pursuant to 42 U.S.C. § 1983 for alleged violations of Plaintiff's rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

The district court's denial of qualified immunity and absolute immunity in this case "is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291."  Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Will v. Hallock, 546 U.S. 345, 350 (2005) ("On the immediately appealable side are orders rejecting absolute immunity and qualified immunity.")(internal citations omitted).

The district court issued its order denying the individual Defendants qualified and absolute immunity on April 10, 2015.  (Civil Minutes, Document 68, Appellants' Excerpts of Record ("AER") 19-35).  The individual Defendants timely filed their Notice of Interlocutory Appeal on April 14, 2015.  (Notice of Appeal, AER 1-18).  Such notice was timely pursuant to Fed. R. App. Proc. 4.

## II.  ISSUES PRESENTED FOR REVIEW

1.  Under the facts of this case, are Defendants Marcia Vreeken, Elaine Wilkins, and Helen Dwojak (by and through her Estate) entitled to qualified immunity as against Plaintiff Preslie Hardwick's 42 U.S.C. § 1983 claims?  See,

Nunez v. Davis, 169 F.3d 1222, 1229 (9th Cir. 2000) ("Whether a public official is entitled to qualified immunity is a question of law.")

      2.     Under the facts of this case, are Defendants Marcia Vreeken, Elaine Wilkins, and Helen Dwojak (by and through her Estate) entitled to absolute immunity as against Plaintiff Preslie Hardwick's 42 U.S.C. § 1983 claims? See, Miller v. Davis, 521 F.3d 1142, 1145 (9th Cir. 2008)("Whether a public official is entitled to absolute immunity is a question of law that is reviewed de novo.") citing Goldstein v. City of Long Beach, 481 F.3d 1170, 1172 (9th Cir. 2007).

## III.   STATEMENT OF THE CASE

      Plaintiff Preslie Hardwick filed this action challenging the constitutionality of her court-ordered removal from her mother's custody.  A juvenile court ordered Plaintiff's removal on February 17, 2000, in the midst of dependency proceedings, which interrupted years of acrimony in divorce litigation featuring cross-allegations of abuse by the parents against each other that raged in Family law court.

      In this lawsuit, Plaintiff claims that the removal order was unconstitutional, and caused by Defendants' misconduct.  Plaintiff's operative Complaint for Damages proceeds against the County of Orange, Marcie Vreeken, Elaine Wilkins, and the Estate of Helen Dwojak[1] pursuant to 42 U.S.C. § 1983 for alleged

---

[1] Helen Dwojak passed away on December 26, 2012.

violations of Plaintiff's Fourth and Fourteenth Amendment rights as well as "Monell-Related Claims." (Complaint, ¶¶ 60-78, Appellants' Excerpts of Record ("AER") 2250-2256). Plaintiff also redundantly seeks "Declaratory Relief" that Defendants' conduct was "improper, unlawful, and unconstitutional." (Id. at ¶¶ 79-85, AER 2256-2258).

### A.    Statement of Facts

Deanna Fogarty and Cary Hardwick married in 1989, and had two daughters, Kendall, born in 1990, and Preslie in 1993.[2] (Complaint, ¶ 17, AER 2241). The marriage quickly grew toxic. Divorce proceedings were commenced in May of 1995, and involved an extremely hostile custody battle, including allegations of abuse. (Petition for Dissolution, AER 1732-1734). In 1996, Ms. Fogarty reported to the Orange County Social Services Agency that Mr. Hardwick molested one, or both, of his daughters, and she sought the immediate and complete suspension of his visitation rights. (Child Abuse Report, AER 2603-2606). However, an investigation determined her claims to be unsubstantiated. (Id.)

Ms. Fogarty nevertheless persisted in her allegations. Consequently, pursuant to California Evidence Code § 730, the family law court appointed an

---

[2] Consistent with the practice employed in dependency and family law appeals, and in order to avoid confusion, this brief will refer to Kendall and Preslie by their first names. No disrespect is intended. See e.g., In re Marriage of Smith, 225 Cal.App.3d 469, 475, fn. 1 (1990).

expert, Dr. Thomas Howell, to do a comprehensive investigation of the Hardwicks.
(Order, AER 815-818).  Following a thorough evaluation, Dr. Howell ruled out
any possibility that Mr. Hardwick had sexually abused either of his daughters.
(Howell Report, AER 820-830).  Dr. Howell recommended that the court order
"more than standard" visitation for Mr. Hardwick.  Id.  He also recommended
therapy for Kendall due to her autism.[3]

Ms. Fogarty was not pleased with Dr. Howell's report, questioning his
qualifications and objectivity.  (Correspondence dated March 24, 1998, AER 832-
833).  Ms. Fogarty still suspected Mr. Hardwick of molesting his daughter(s).
Accordingly, she requested another investigation by a different expert, Dr. Russell
Johnson.  (Stipulation and Order, AER 835-836).

Dr. Johnson did a comprehensive investigation.  In December 1998, he, like
Dr. Howell, determined that no abuse, sexual or otherwise, had ever been inflicted
on Kendall or Preslie by their father.  Dr. Johnson similarly recommended
increased visitation for Mr. Hardwick.  (Confidential Psychological Report, dated
December 14, 1998, AER 2346-2383).

In June of 1999, Dr. Marjorie Mitchell was retained by the Hardwicks to
provide psychological therapy for both Preslie and Kendall.  Although Ms. Fogarty
continued with the molestation allegations, Dr. Mitchell's initial notes consistently

---

[3] Kendall was diagnosed with mild autism when she was a toddler.  (Complaint, ¶
17, AER 2241).

document that both girls repeatedly denied any abuse. (Session Notes dated July 28, 1999, and August 23, 1999, AER 2567-2568).

At this point, Ms. Fogarty had primary custody of the girls, and Mr. Hardwick only had them on most weekends. (Complaint, ¶ 18, AER 2241). Despite two separate reports finding no abuse, Ms. Fogarty continued to publicly claim that Mr. Hardwick had molested Kendall, and the custody litigation heated up even more. (Ex Parte for Order, filed November 3, 1999, AER 830-878). Mr. Hardwick pressed the custody issue in court, and sought an order returning the family to Dr. Howell for further investigation. (Id.)

With those issues pending, suddenly, on November 11, 1999, Ms. Fogarty took Kendall to Dr. Mitchell on an emergency basis. Out of the blue, Kendall claimed her father molested her for most of her life. (Deposition of Kendall Hardwick taken December 10, 2012, at 35:12-15, 37:20-38:6, 40:22-41:8, 42:1-16, 43:2-11, 44:3-19, AER 1397-1413; Dr. Mitchell's Notes at MITCHELL 348-360, AER 2554-2566). Although suspicious of the timing of these allegations, Dr. Mitchell, as a mandated reporter, felt obliged to make a report of suspected abuse. (Deposition of Dr. Marjorie Mitchell, at 44:8-45:4, AER 2139-2145; Complaint ¶ 15, AER 2241). Remarkably, Dr. Mitchell noted that Ms. Fogarty atypically seemed "very excited" when told of the report. (Dr. Mitchell Depo., at 154:13-17, AER 1423-1429).

Days later, on November 17, 1999, dependency proceedings commenced in the juvenile court. (Juvenile Dependency Petition, AER 2647-2653). Mr. Hardwick's visitation rights were immediately suspended, and he was permitted only monitored visits going forward. Primary custody of the girls remained with Ms. Fogarty. (Complaint, ¶¶ 20, 22, 24, AER 2241-2242). The start of the juvenile court case put the divorce litigation on hold. Thus, the pending motions regarding custody and the follow-up evaluation by Dr. Howell were suspended.

At the first juvenile court hearing, both parents, but particularly Ms. Fogarty, were warned by the court not to discuss _**any**_ aspect of the case with their children. (11/17/99 Reporter's Transcript ("RT") 3:12-17, AER 2655-2656). Two days later, at the next hearing, the court learned that Mr. Hardwick's phone and monitored face-to-face visits with his children had not occurred. (11/19/1999 RT 12: 5-13, AER 2658-2660). The court then specifically admonished Ms. Fogarty:

> You need to follow the rules of the court. If I say that father gets phone calls, he gets phone calls. If I tell you he gets monitored contact, he gets that contact. If you are not abiding by that, that's another reason somebody is going to remove your children from you.

(Id. at 12:23-13:2, AER 2658-2660)

The next hearing occurred on February 8, 2000. The court noted continued issues with visitation, and again warned Ms. Fogarty:

> [H]e is going to have all these visits. We are not going to be missing any visits and rescheduling them. That's not appropriate.

6

> [T]his is going to happen. Now, if it doesn't happen, I have a place that the children can be where I can make it happen and there won't be any scheduling conflicts…so ma'am, do you understand that?

(2/8/00 RT 18:12-21, AER 2662-2664).

A special hearing was then scheduled by the court for the next week in order for Social Services "to provide [the court] with an update to tell [it] how the visitations and phone calls [were] going." (2/8/00 RT 19:11-20, AER 2664). The court admonished Ms. Fogarty that "[i]f I get word that we are missing visits, that phone calls are being missed, that we are not cooperating, then on that date, I am likely to pull the children from you and have them at Orangewood." (Id.)

The very next day, on February 9, 2000, a mere one day after the court specifically warned Ms. Fogarty that noncompliance with the court's orders would result in the girls' removal, Kendall and Preslie told Dr. Mitchell that they were scared their father would make them go to a foster home. (Session Notes dated February 9, 2000, at MITCHELL 587-590, AER 2579-2584). The timing of this is particularly significant because this inflammatory information could only have come from Ms. Fogarty as Mr. Hardwick did not have any contact with either daughter between the hearing on February 8th and this therapy session the next day. Likewise, the social workers had no contact with the girls again until February 15, 2000, when they monitored a visit the girls had with their father.

At the hearing on February 17, 2000, the court learned that the visit

scheduled for February 13, 2000, did not happen. Evidence that the children were being exposed to issues in the litigation also surfaced. For example, the court was advised that Kendall inappropriately discussed the court-approved monitor claiming he "threatened" her when, in the court's view, she did not even understand what "threatened" meant. (2/17/00 RT 30:4-18, AER 2666, 2669). Ms. Fogarty was also reportedly heard telling one of her daughters that their father was trying to take them away from her. (Id. at 22:19-23:5, AER 2667-2668).

After hearing these reports regarding missed visits, missed phone calls, and inappropriate statements by the children, the court determined, "You are using these children ma'am. There is no question in my mind; based on what I have got right now before me, that's what's going on." (2/17/00 RT 30:21-23, AER 2669). The Court then ruled that keeping the children with Ms. Fogarty (despite the social worker's recommendation to do so)[4] "would create a substantial risk of emotional and psychological detriment to these children." (Id. at 31:7-13, AER 2399). Social workers Marcie Vreeken and Elaine Wilkins were ordered to remove the children from Ms. Fogarty "forthwith." (Id.; Complaint, ¶ 40, AER 2445). Plaintiff and her sister were taken to Orangewood Children's Home where they

---

[4] In their court report to the court for the February 17, 2000, hearing, the social worker's recommendations remained "unchanged." (Court Report, AER 2671-2674). That is, going back to the social worker's recommendations on December 21, 1999, the children were to remain in the custody of the mother under the supervision of Social Services. (Jurisdictional/Dispositional Hearing Report, AER 2681-2718; Court Report Addendum, AER 2676-2679).

stayed until March 21, 2000, when they were placed in the foster care of Cheryl Gibson.  (Complaint, ¶¶ 44, 47, AER 2246-2247; Deposition of Preslie Hardwick taken October 17, 2014, at 31:8-23, AER 2226).

In April 2000, while the girls were in foster care, Ms. Fogarty, Mr. Hardwick, and Kendall and Preslie (by their counsel) agreed to a "Voluntary Case Plan" governing parental visitation and custody issues.  (4/19/00 RT 2:1-3:14, 6:5-20, AER 2402-2405).  The juvenile court deferred approving the plan pending a third court-retained expert's evaluation by another well-qualified psychologist, Dr. Martha L. Rogers.  (Id. at 2:1-3:14, 6:5-20, Minute Order, AER 2724-2725).  The court specifically directed Dr. Rogers to address the continuing abuse allegations against Mr. Hardwick, and whether it was otherwise safe for his custody rights to be restored.  (Id.)

In a very detailed 70-page report to the court, Dr. Rogers concluded that the sexual abuse allegations were false, and had been "shaped" by Ms. Fogarty. (Report of Psychological Evaluations, AER 2727-2789).  Ultimately, Dr. Rogers recommended a complete reversal of the prior custody arrangement: Mr. Hardwick would have sole custody of Kendall and Preslie, and Ms. Fogarty was limited to monitored visitations.  Dr. Rogers also recommended that both parents receive counseling on parenting skills, and that Ms. Fogarty undergo a regimen of therapy and counseling to deal with her anger and impulse control issues.  (Id.)

Mr. Hardwick, Ms. Fogarty, their counsel, counsel for the children, and Social Services stipulated to Dr. Rogers' recommendations which the court then approved on May 19, 2000. (Voluntary Case Plan, AER 1881-1887). The dependency petition was then dismissed, the juvenile court proceedings terminated, and Kendall and Preslie went home with their father. (Id.) With that, these Defendants' involvement with the Hardwick Family ended.[5] (Minute Order, AER 2791-2792).

The divorce litigation then reignited. Barely one week later, on May 26, 2000, Ms. Fogarty moved the family law court to vacate the juvenile court's order claiming she was coerced into the Voluntary Case Plan. (Ex Parte Application, AER 1891-1924). Because of the confidentiality of the juvenile court proceedings, the family law court ordered Dr. Rogers to do yet another comprehensive evaluation, but without reference to the juvenile court case. (Order filed June 14, 2000, AER 1926-1928).

Dr. Rogers issued an updated report reaffirming that Mr. Hardwick had not abused either daughter, and again recommending only supervised visitation for Ms. Fogarty. (Report of Psychological Evaluations by Dr. Martha L. Rogers dated June 25, 2000, AER 2794-2864). Dr. Rogers' advice was incorporated as the order of the court.

---

[5] There was very limited informal monitoring of the family for six months involving a handful of in-home visits by a new social worker.

As the custody battle raged on, Plaintiff and her sister continued in therapy with Dr. Mitchell. During these sessions, Kendall began recanting her molestation allegations. (Records produced by Marjorie Cain Mitchell, Ph.D., at MITCHELL 558-560, 564-566, 569, 571, 575, 614, 619, 622-623, 625-626, AER 2569-2571, 2572-2578, 2583-2588; Kendall Hardwick's Supplemental Responses to the County of Orange's Special Interrogatories (Set Two), at 7:14-22, Kendall Hardwick's Second Supplemental Responses to the County of Orange's Special Interrogatories (Set Two) at 20:12-22:20, AER 1418-1421). Kendall also told Dr. Mitchell that her mother instigated the allegations from the start. (Id.) Dr. Mitchell noted Kendall's overwhelming emotional trauma and sense of guilt in all this.

Additionally, Dr. Mitchell took note of a story written by Kendall entitled "The Hardships." In the story, Kendall told of two little girls whose mother fed them lies about their father. (Deposition of Kendall Hardwick taken on December 10, 2012, at 60:13-23, AER 2090-2094, 2105-2106; Records produced by Marjorie Cain Mitchell, Ph.D., at MITCHELL 627-630, AER 2589-2592). Because of those lies, both girls in the story were taken away from their parents. (Id.)

By September 2001, the girls' attorney reported to the family law court that Kendall had completely recanted the abuse allegations. (Closing Argument, 5:15-19, AER 1948-1956). She stated that Kendall "…not only [recanted] the

11

molestation allegations against her father," but she also "worked through her issues regarding the allegations against her father and her mother's role in her making the allegations." (Id. at 5:15-19). Counsel also reported that while Ms. Fogarty was still not complying with prior court orders, both girls "flourish[ed]" in their father's custody. "The only unhappiness of both children is their mother's failure to visit with them for the better part of a year…." (Id. at 2:23-4:23; 5:25-6:1). Counsel then recommended that the girls remain in the custody of their father.[6] (Id. at 6:20-22).

In December 2001, at the conclusion of the custody trial, the family law court issued its order granting legal and physical custody of Plaintiff and her sister to their father. (Order and First Amended Order, AER 1959-1982). In a detailed opinion, the Court forcefully rejected the notion that Mr. Hardwick had sexually abused Kendall, noting that Kendall's handwritten story, "The Hardships," was semi-autobiographical, which, standing alone, was convincing evidence that Ms. Fogarty had coached Kendall, perhaps unwittingly, to make these accusations. (Id.) The Court also found that Ms. Fogarty voluntarily entered into the "Voluntary Case Plan." The Court's findings were reduced to a Judgment in

_____

[6] Kendall's and Preslie's attorney in the dependency and family law proceedings was court-appointed, and she was duty-bound "to gather facts that bear on the best interests of the child, and present those facts to the court, including the child's wishes when counsel deems it appropriate…." (Closing Argument, 2:9-15, citing to Cal. Fam. Code § 3151). Although Plaintiff originally sued her attorney, Sharon Grier, she has since dismissed her as a defendant.

February 2002. (Judgment, AER 1999-2014). In 2006, the Hardwicks finally

reached an agreement for shared custody of their children. (Complaint, ¶ 57, AER

2249).

Civil litigation ensued. Ms. Fogarty initiated civil litigation against the

County and three of its social workers. (Complaint in <u>Fogarty-Hardwick</u>, Exhibit

AER 1984-1997). Ms. Fogarty's case was limited to claims that her rights to

privacy and/or familial association were violated. (Verdict Forms, AER 2016-

2028). Indeed, evidence of the false molestation allegations, the court-ordered

expert evaluations, or the findings of either the juvenile or the family law courts

was not admitted. (Orders on Motions in Limine, AER 2030-2061). Dr. Rogers,

Dr. Howell, and Dr. Johnson never even testified in Ms. Fogarty's trial, nor did

Kendall or Preslie. (<u>Cf.</u> Chronological Witness Index, AER 2063-2067). That jury

found that Ms. Fogarty's rights had been violated. (Verdict Forms, AER 2016-

2028).

In 2011, Kendall, then living with her mother, initiated her own civil lawsuit

to address whether **her** Constitutional rights had been violated. (Complaint in

<u>Kendall Hardwick</u>, AER 2069-2088). In her case, Kendall testified that she was

molested, and every statement she made to the contrary was a lie. (Deposition of

Kendall Hardwick, taken December 10, 2012, at 52:1-53:15, AER 2090-2106).

For example, although she admitted writing the story, "The Hardships," she

13

claimed it, too, was a lie, and that she was forced to write it.

During the pendency of Kendall's case, Preslie initiated this action. In this case, Mr. Hardwick testified that in early 2014, Kendall tearfully confessed to him that the testimony she gave in her lawsuit was false, that she knew he **never** abused her, that her mother not only manipulated her into making the allegations, but that she and her attorney were coercing Kendall to continue the lies in her litigation. (Deposition of Cary Hardwick taken June 4, 2014, at 28:21-36:25; 38:13-43:10; 47:5-50:18; 51:8-54:8; 55:16-56:9, AER 2156-2186). Kendall then moved away from her mother's home, engaged different counsel, and promptly dismissed her case. (Dismissal, AER 2188-2190).

Kendall also testified in this case. After waiving her Fifth Amendment rights,[7] in highly emotional and explosive testimony, Kendall confirmed that her earlier testimony was false. (Deposition of Kendall Hardwick taken October 27, 2014, at 68:6-70:3, AER 2192-2216). Her father **never** abused her in any way. (Id.). Her mother coached her to lie. (Id. at 73:15-81:7). Her mother and her former attorney coerced her to continue those lies in her lawsuit, going so far as to threaten her with hypnotherapy. (Id. at 82:24-84:17). She also testified that her mother was an emotionally abusive parent who manipulated her, and took

---

[7] In her first deposition in this case, Kendall asserted her Fifth Amendment rights and refused to answer questions regarding the truth of her father's testimony. On October 16, 2014, Magistrate Judge Nakazato ordered her to either answer these questions or show cause why she should not be compelled to do so. She chose to answer the questions fully.

advantage of her autism.[8]  (Id. at 90:25-91:18).  Further, Kendall testified that the County and its social workers did nothing wrong, and removing her and her sister from their mother's custody was absolutely the right thing for their welfare.  (Id. at 97:15-98:8).

For her part, Preslie confesses no memory of any of the significant facts during the relevant times in the history of this saga.  (Deposition of Preslie Hardwick taken October 17, 2014, at 20:17-21:13; 25:11-15; 38:1-9; 41:5-24, AER 1507-1520).  She also admits to having no memory of the social workers whom she is suing.  (Id.).  Rather, she predicates her claims solely on her mother's testimony.  (Id. at 72:2-20; 75:4-15).  Thus, Plaintiff faults Defendants for filing allegedly false dependency petitions alleging that her mother "failed to protect" Kendall and Preslie, making allegedly false unsworn court reports and oral statements, and giving allegedly perjured testimony to the juvenile court. (Complaint, ¶¶ 21, 22, 29, 36-39, 42, 43, 49, AER 2241-2247).  As for the County, Plaintiff contends the County maintains unconstitutional "policies", "practices", "customs" and/or "procedures" which are actionable under the federal civil rights provisions of 42 U.S.C. § 1983.  (Complaint, ¶ 74, AER 2253-2255).

---

[8] Dr. Rogers and Dr. Mitchell each testified that Kendall's condition makes her very vulnerable to manipulation by someone with whom she is tightly bonded. (Rogers Depo, at 94:17-101:15, AER 2116-2123; Mitchell Depo, 188:5-21, AER 2153).

**B.    Procedural Background**

On January 9, 2015, Plaintiff and the Orange County Defendants filed cross-motions for summary judgment/adjudication.  Plaintiff's motion sought "the [district court's] adjudication that the removal of Plaintiff from her mother violated her Constitutional rights of familial association as this issue, and any defenses Defendants raise nor [sic], or could have raised in prior litigation, ha[d] already been conclusively determined in prior litigation."   (Plaintiff's Motion for Summary Judgment/Adjudication, Document 37, AER 1547-1574).  The Orange County Defendants sought summary judgment on the basis that Plaintiff's claims against the individual defendants were barred by absolute and qualified immunities, that Plaintiff had no evidence in support of her "Monell-Related Claims," and that Plaintiff's "Declaratory Relief" claim was barred as a matter of law.  (Defendants' Motion for Summary Judgment, Document 33, AER 1575-1607).

On March 20, 2015, the district court heard oral arguments as to both motions, and took the matters under submission.  (Civil Minutes, Document 58).  On April 20, 2015, the district court issued its order "granting in part and denying in part Plaintiff's Motion for Summary Judgment (Doc. 37) and granting in part and denying in part Defendants' Motion for Summary Judgment (Doc. 33)."  (Civil Minutes, Document 68, AER 19-35).

16

As to Plaintiff's motion, the district court denied Plaintiff's motion as to her claim that Defendants were collaterally estopped from litigating the issue of liability in this case. (Id. at p. 9, AER 10). The district court further determined that Plaintiff's collateral estoppel argument barring Defendants from asserting absolute immunity in this matter was a "nonstarter." (Id.) Finally, the district court disposed of Plaintiff's Monell claim, finding it failed for a lack of evidence, and dismissed Plaintiff's Declaratory Relief claim as duplicative of her other claims. (Id. at p. 16-17, AER 17-18).

The Orange County Defendants appeal, however, the district court's order denying the individual defendants—Marcia Vreeken, Elaine Wilkins, and Helen Dwojak (by and through her Estate)—qualified immunity and absolute immunity from Plaintiff's claims. Specifically, as regards qualified immunity, the district court erroneously determined that "Defendants are collaterally estopped from re-litigating the issue of qualified immunity in this Court, and that *Costanich [v. Department of Social and Health Services*, 627 F.3d 1101 (9th Cir. 2010)] did not change the law such that collateral estoppel would no longer apply. Moreover, for the reasons already noted, even if the Court did consider the issue anew, it would not find the defense of qualified immunity available to Defendants on the alleged facts." (Document 68, at p. 14, AER 15). In terms of absolute immunity, the district court incorrectly found that "absolute immunity does not apply." (Id. at p.

10, AER 11).

Simply put, the district court's denial of qualified and absolute immunities to the individual defendants is directly traversed by this Court's prior decisions. This Court has rightly found that "that the right not to be accused based on deliberately falsified evidence during civil investigations which could result in the [custodial removal of children] was ***not*** clearly established" in 2001. See, Costanich v. Department of Social and Health Services, 627 F.3d 1101, 1114, 1116 (9th Cir. 2010)(emphasis added). Thus, the same right could not have been clearly established in 2000, when Plaintiff's court-ordered removal occurred here.

What is more, this Court has also determined that "[a]bsolute immunity is extended to state officials, such as social workers, when they are performing quasi-prosecutorial and quasijudicial functions." Tamas v. Dep't of Soc. & Health Servs., 630 F.3d 833, 842 (9th Cir. 2010) citing Caldwell v. LeFaver, 928 F.2d 331, 333 (9th Cir. 1991) (naming advocacy to the decisionmaker and execution of a court order as examples). The district court's failure to correctly apply this well-reasoned precedent is reversible error.

## IV.   SUMMARY OF THE ARGUMENT

As the Court is aware, the qualified immunity doctrine provides for judicial screening of civil litigation challenging the Constitutionality of peace officers' on-the-job judgment calls. See, Saucier v. Katz, 533 U.S. 194, 201 (2001)(Discussing

18

the pertinent qualified immunity dismissal standards). Under the doctrine, dismissal is required at the outset whenever a Section 1983 plaintiff fails to allege a violation of his Constitutional rights. Id.; see, Baker v. McCollan, 443 U.S. 137, 146 (1979)("Section 1983 imposes liability for violations of rights protected by the Constitution . . .")

Even where a plaintiff can demonstrate a Constitutional violation, however, the second level of qualified immunity analysis requires dismissal whenever the officer's chosen course of conduct was not barred by "clearly established" case law, which was in existence at the time the officer was required to act. Id. at 201; see, Kennedy v. Ridgefield City, 439 F.3d 1055, 1065 (9th Cir. 2006) ("Our task is to determine whether the preexisting law provided the defendants with 'fair warning' that their conduct was unlawful.")

"Finally, even if the violated right was clearly established, the [Supreme] Court recognized that it may be difficult for a police officer fully to appreciate how the legal constraints apply to the specific situation he or she faces. Under such a circumstance, '[i]f the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" Blankenhorn v. City of Orange, 485 F.3d 463, 471 (9th Cir. 2007) quoting Saucier, 533 U.S. at 205 (alteration in original). As such, "qualified immunity provides a protection to government officials that is quite far reaching." Brewster v. Board of Education, 149 F.3d 971,

977 (9th Cir. 1998). It requires dismissal in favor of all public officials "but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

Absolute immunity has also been extended in a variety of contexts, including initiating court dependency proceedings (<u>Beltran v. Santa Clara County</u>, 514 F.3d 906, 908 (9th Cir. 2008)); testimony given during dependency hearings (<u>Meyers v. Contra Costa County Dep't of Social Services</u>, 812 F.2d 1154, 1156 (9th Cir. 1987)); preparation of reports to the court (<u>Demoran v. Witt</u>, 781 F.2d 155, 156-158 (9th Cir. 1986)); presentation of false evidence (<u>Masoud v. County of San Joaquin</u>, 2006 U.S. Dist. LEXIS 81828, 2006 WL 325179, at *5 (E.D.Cal. Nov.8, 2006)); withholding exculpatory evidence (<u>Broam v. Bogan</u>, 320 F.3d 1023, 1030 (9th Cir. 2003)); and false unsworn reports to the court (<u>Milstein v. Cooley</u>, 257 F.3d 1004, 1012 (9th Cir. 2001)).  And social workers are entitled to absolute immunity when they are performing quasi-prosecutorial and quasijudicial functions.  <u>Tamas v. Dep't of Soc. & Health Servs.</u>, 630 F.3d 833, 842 (9th Cir. 2010) citing <u>Caldwell v. LeFaver</u>, 928 F.2d 331, 333 (9th Cir. 1991) (naming advocacy to the decisionmaker and execution of a court order as examples).

Here, Plaintiff is barred from proceeding against the individual Orange County Defendants for the acts which she alleges form the basis of her unconstitutional removal.  Qualified immunity shields the individual defendants

from suit given this Court's pronouncements about the state of the law in the year 2000, when Plaintiff was ordered removed from her mother's custody by the juvenile court. Absolute immunity also bars Plaintiff's claims as the individual defendants were performing quasi-prosecutorial and quasijudicial functions in submitting unsworn written and oral presentations to the juvenile court. The district court's failure to grant these individual Defendants these immunities, and instead subject them to suit for simply carrying out a juvenile court order, is error, and consequently should be reversed.

## V. ARGUMENT

### A. Marcia Vreeken, Elaine Wilkins, and Helen Dwojak are entitled to qualified immunity.

Congress enacted 42 U.S.C. § 1983 in order to provide citizens with a means to seek civil damages against public employees who violate their federal constitutional rights. See, Baker v. McCollan, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution . . ."). However, the Supreme Court has recognized that Section 1983 damage suits against governmental officials entail substantial "social costs" which include the "expense of litigation, the diversion of official energy from pressing public issues and the deterrence of able citizens from acceptance of public office." Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982). The Court has also recognized that public

officials "should not err always on the side of caution because they fear being sued." Hunter v. Bryan, 502 U.S. 224, 229 (1991).

The qualified immunity doctrine addresses these concerns by providing for pre-trial judicial screening of Section 1983 claims. See, Johnson v. County of Los Angeles, 340 F.3d 787, 791 (9th Cir. 2003) (It is for "courts, not juries to settle the ultimate questions of qualified immunity."); Nunez v. Davis, 169 F.3d 1222, 1229 (9th Cir. 2000) ("Whether a public official is entitled to qualified immunity is a question of law."). The Supreme Court has emphasized that qualified immunity determinations involve multiple levels of judicial screening. See, Saucier v. Katz, 533 U.S. 194, 201 (2001).

The first step is to ask: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). If construing the evidentiary record in the light most favorable to the plaintiff, a court concludes that the plaintiff's rights were violated, then the court proceeds to the second step of the qualified immunity analysis. Id. In the second phase of the analysis, a public employee defendant is entitled to qualified immunity whenever the applicable law governing his conduct was not "clearly established"—i.e., if it would not have been clear to a reasonable officer that his conduct was unlawful under the factual circumstance he faced. Saucier v. Katz, supra, 533 U.S. at 202.

22

Thus, in order to survive an assertion of qualified immunity, a Section 1983 plaintiff must point to published, dispositive case law that states "a clearly established rule prohibiting the [public employee] from acting as he did ... ***[i]n the circumstances presented to [the public employee].***" <u>Saucier v. Katz</u>, 533 U.S. 194, 209 (2001) (Emphasis added); <u>City & Cnty. of San Francisco v. Sheehan</u>,135 S.Ct. 1765, 1775-1776 (2015) ("'We have repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality.' Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures.")(internal citations omitted).

Qualified immunity therefore "operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." <u>Hope v. Pelzer,</u> 536 U.S. 730, 739 (2002); <u>see</u>, <u>Mendoza v. City of W. Covina</u>, 206 Cal. App. 4th 702, 712 (2012) ("Whether the right was clearly established turns on whether the case law at the time of the alleged constitutional violation made it sufficiently clear that every reasonable official would have known his conduct violates that right."); <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)("'If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful."); <u>City</u>

& Cnty. of San Francisco v. Sheehan,135 S.Ct. 1765, 1774 (2015)("An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it,' meaning that 'existing precedent . . . placed the statutory or constitutional question beyond debate.'")(internal citations omitted).[9]

It bears emphasis that Section 1983 plaintiffs cannot satisfy this burden through citation to broad, generalized legal principles, which are divorced from the actual facts of the case they bring.  See, Saucier v. Katz, supra, 533 U.S. at 201-202 (Rejecting the argument that a Section 1983 plaintiff may overcome an assertion of qualified immunity by simply citing broadly-worded "reasonableness" principles.); De la Cruz v. Kauai County, 279 F.3d 1064, 1069 (9th Cir. 2002) (Where a Section 1983 plaintiff fails to "cit[e] any case" barring the officer's conduct, qualified immunity is required because "[i]t would not be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.")(Citations omitted); City & Cnty. of San Francisco v. Sheehan,135 S.Ct. 1765, 1775-1776 (2015) ("'We have repeatedly told courts—and the Ninth

---

[9] In Pearson v. Callahan, 555 U.S. 223, 236 (2009), the Supreme Court determined: "On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."

Circuit in particular—not to define clearly established law at a high level of generality.'  Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures.")(internal citations omitted).

Rather, Section 1983 plaintiffs must cite ***factually relevant*** authority barring the conduct for which they seek to recover. <u>See</u>, <u>Saucier v. Katz</u>, <u>supra</u>, 533 U.S. at 209 (2001) (Officer immune from liability because "neither respondent nor the Court of Appeals has identified ***any case*** demonstrating a clearly established rule ***prohibiting the officer from acting as he did***....")(Emphasis added); <u>Krainski v. State ex rel. Bd. of Regents</u>, 616 F.3d 963, 970 (9th Cir. 2010)(Granting qualified immunity to government employee defendants where plaintiff "has been unable to present us with any binding or persuasive authority for the proposition that a substantive due process violation occurs when a university official places an unwarranted disciplinary notation on a transcript."); <u>Briley v. City of Hermosa Beach</u>, 2008 U.S. Dist. LEXIS 87571 (C.D. Cal. 2008) (Qualified immunity granted where "Plaintiff cites no case law demonstrating a clearly established rule prohibiting Officer Phillips from jumping on Briley's back in these circumstances.")

"Finally, even if the violated right was clearly established, the [Supreme] Court [has] recognized that it may be difficult for a police officer fully to

appreciate how the legal constraints apply to the specific situation he or she faces. Under such a circumstance, '[i]f the officer's mistake as to what the law requires is reasonable,... the officer is entitled to the immunity defense.'" <u>Blankenhorn v. City of Orange</u>, 485 F.3d 463, 471 (9th Cir. 2007) quoting <u>Saucier v. Katz</u>, <u>supra</u>, 533 U.S. at 205(alteration in original); <u>Butz v. Economou</u>, 438 U.S. 478, 507 (1978) (Noting that qualified immunity covers "mistakes in judgment, whether the mistake is one of fact or one of law.")

As such, "qualified immunity provides a protection to government officials that is quite far reaching." <u>Brewster v. Board of Education</u>, 149 F.3d 971, 977 (9th Cir. 1998). "If officers of reasonable competence could disagree on the issue [of whether a course of conduct is constitutional], immunity should be recognized." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986). As summarized by one appellate Court:

> The inquiry is not whether another reasonable or more reasonable interpretation of events can be construed... after the fact. Rather, the issue is whether a reasonable officer could have believed that his conduct was justified. This is so notwithstanding that reasonable officers could disagree on the issue.

<u>Reynolds v. County of San Diego</u>, 84 F.3d 1162, 1170 (9th Cir. 1996)(Citations omitted).

This aspect of qualified immunity is so sweeping that it safeguards "all but the plainly incompetent or those who knowingly violate the law." <u>Malley v.</u>

Briggs, 475 U.S. 335, 341 (1986). Indeed, qualified immunity protection frees public employees from civil litigation concerning even fairly debatable decisions that they are required to make in executing their public duties. See, Puliafico v. County of San Bernardino, 42 F. Supp. 2d 1000, 1009 (C.D.Cal.1999)("Howell's actions in stopping and detaining plaintiff..., under the circumstances of this case, were within the bounds of ***arguably reasonable*** police conduct...."; Qualified immunity ordered.)(Emphasis added.); Mattos v. Agarano, 661 F.3d 433, 448 (9th Cir. 2011) cert. denied, 132 S. Ct. 2681 (2012) (Granting qualified immunity where court "cannot conclude. . . in light of . . .existing precedents, that "*every* 'reasonable official would have understood' ... *beyond debate* " that tasing Brooks in these circumstances constituted excessive force.")(Italics original).

As set forth below, Plaintiff's allegations fail under multiple levels of the qualified immunity analysis.

    1.    Collateral Estoppel does not Bar Defendants from Asserting Qualified Immunity Here.

"[A] federal court considering whether to apply issue preclusion based on a prior state court judgment must look to state preclusion law." McInnes v. State of Cal., 943 F.2d 1088, 1092-1093 (9th Cir. 1991). In California, courts have found that a particular danger of injustice arises when collateral estoppel is invoked by a nonparty to prior litigation; such cases require close examination to determine

whether use of the doctrine is fair and appropriate.  See, Vandenberg v. Superior Court, 21 Cal.4th 815, 829 (1999).  Courts are instructed to view with caution a party's attempt to invoke collateral estoppel "especially where collateral estoppel is applied 'offensively'…."  Roos v. Red 130 Cal.App.4th 870, 880 (2005).

Collateral estoppel is used offensively when "the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party."  Smith v. ExxonMobil Oil Corp., 153 Cal.App.4th 1407, 1414 (2007), quoting, Parklane Hosiery Co. v. Shore 439 U.S. 322, 326, fn. 4 (1979).  The offensive use of collateral estoppel "is more closely scrutinized than the defensive use of the doctrine."  White Motor Corp. v. Teresinski, 214 Cal.App.3d 754, 763 (1989); see Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329-331 (1979).

This is because "[o]ffensive use of collateral estoppel…creates…every incentive [for a plaintiff] to adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment.  [Internal citations omitted.]  Thus offensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action."  Parklane Hosiery Co. v. Shore, 439 U.S. 322, 330 (1979).

Collateral estoppel, or issue preclusion, operates to bar re-litigation of issues

previously litigated **if** the issues: "(1) Are **identical** to those litigated in the first action; [and] (2) Were **actually litigated and necessarily decided** in determining the first action…." Pajaro Valley Water Management Agency v. McGrath, 128 Cal.App.4th 1093, 1100 (2005)(Emphasis added). Plaintiff cannot establish these elements.

"Issues of fact are not identical if the legal standards governing their resolution are significantly different, even if the factual setting of both suits is the same." Waltz v. U.S. Dept. of Agriculture, 251 F.R.D. 491, 497 (E.D. Cal. 2008). Indeed, California courts have long held that an intervening change in the applicable law defeats a claim of collateral estoppel. See, Pacific Tel. & Tel. Co. v. City and County of San Francisco, 197 Cal.App.2d 133(1961)(collateral estoppel does not apply "where the circumstances have changed between the issue of the first judgment and its assertion as . . . collateral estoppel in a subsequent action. [Citation.] A change in the law creating an altered situation is such a change of circumstances."); California Hospital Association v. Maxwell-Jolly 188 Cal.App.4th 559, 571-572 (2010) ("It is…well established that when the proceeding in which issue preclusion is currently sought involves different substantive law than the previous proceeding, collateral estoppel does not apply."); United States Golf Ass'n v. Arroyo Software Corp. 69 Cal.App.4th 607 (1999) ("Collateral estoppel does not apply…where the previous decision was based on

different substantive law."); <u>Valley View Health Care, Inc. v. Chapman</u>, 992 F.

Supp. 2d 1016, 1047 (E.D. Cal. 2014)(same); <u>Huber v. Jackson</u> 175 Cal.App.4th

663, 678 (2009) (Declining to collaterally estop party in second action where after

first action, new precedent on the subject indicated a change in law); <u>Multi</u>

<u>Denominational Ministry v. Gonzales</u>, 474 F.Supp.2d 1133, 1143 (N.D. Cal. 2007)

(Holding prior case had no preclusive force where United States Supreme Court

decision "shifted the legal terrain surrounding plaintiffs' suit"). These principles

bar Plaintiff's attempted invocation of "collateral estoppel" here.

At the time of the entry of judgment in <u>Fogarty-Hardwick</u> in March 2007,

courts were employing a variety of formulations for resolving "familial

association" claims. <u>Compare</u>, <u>Moreland v. Las Vegas Metropolitan Police Dep't</u>,

159 F.3d 365 (9th Cir. 1998) ("purpose to harm"); <u>Byrd v. Guess</u>, 137 F.3d 1126,

1133 (9th Cir. 1998) ("deliberate indifference") (superseded by statute on other

grounds); <u>Lee v. City of Los Angeles</u>, 250 F.3d 668 (9th Cir. 2001) ("deliberate

indifference" or "unwarranted interference"). As of March 2007, no court to

consider "familial association" claims had endorsed the wording of the jury

instruction under which the <u>Fogarty-Hardwick</u> jury rendered their verdict. In

<u>Fogarty-Hardwick</u>, the jury was instructed that Deanna Fogarty only had to prove:

> That [Defendants], by [their] words or conduct, intentionally
> removed and/or caused the removal and/or detention of
> Plaintiff's children from Plaintiff's custody, or otherwise
> interfered with her rights as a parent";

30

…

> That defendants' conduct violated Ms. Fogarty-Hardwick's right of familial association, including her right to the care and custody of her two minor children, Kendall and Preslie Hardwick, or violated her right to privacy.

(Jury Instructions read to the jury in <u>Fogarty-Hardwick</u>, AER 1185-1186).

Since then, courts have continued to alter the quantum of proof required for Fourteenth Amendment "familial association" claims. Again, none of these courts have adopted the formulation of "familial association" rights employed by the <u>Fogarty-Hardwick</u> jury instructions. For example, in <u>Porter v. Osborn</u>, 546 F.3d 1131 (9th Cir. 2008), this Court held that the overarching standard for such claims must be limited to "official conduct that 'shocks the conscience'…." <u>Id.</u> at 1137. Thus, the conduct must "shock the conscience" whether the conduct amounted to "deliberate indifference" or "intent/purpose to cause harm." <u>See</u>, <u>Wilkinson v. Torres</u>, 610 F.3d 546, 554 (9th Cir. 2010) citing <u>Porter</u>, <u>supra</u>, 546 F.3d at 1137. None of this precedent existed in 2007 when <u>Fogarty-Hardwick</u> was tried.

The foregoing cases impose a completely different analytical framework for resolving "familial association" claims than that which was employed in the <u>Fogarty-Hardwick</u> jury instructions. Rather than the rigorous "shocks the conscience" standard, Ms. Fogarty was only required to prove that the Defendants "**intentionally**…**caused**" the removal of her children "**or otherwise interfered with her rights as a parent**." (Jury Instructions, AER 1185-1186)(emphasis added). While the involvement of social workers in a family's crisis to some

31

extent involves some interference with parents' rights, that alone has never been held to presumptively "shock the conscience." In short, the variance in liability standards between what was employed in Fogarty-Hardwick and what applies now precludes the offensive application of collateral estoppel.

Significantly, after Fogarty-Hardwick, this Court found that, as of 2000, the misconduct alleged here ("concealing evidence, misleading the dependency court, falsifying evidence, giving false testimony, failing to divulge exculpatory evidence, [and] committing perjury")(Complaint, ¶ 12, AER 2239-2240) did ***not*** violate "clearly established" rights in the context of ***civil*** child removal proceedings. Specifically, in Costanich v. Department of Social and Health Services, 627 F.3d 1101, 1114 (9th Cir. 2010), the this Court held, "Although we conclude that, ***going forward***, officials who deliberately fabricate evidence in civil child abuse proceedings which result in the [violation of Fourteenth Amendment constitutional rights] are not entitled to qualified immunity, this right had ***not*** previously been clearly established in the civil context." (Emphasis added).

The Costanich court granted qualified immunity to social workers for similar alleged misconduct which took place ***one year after*** events at issue in this case. Id. at 1114, 1116 ("Because we conclude that the right not to be accused based on deliberately falsified evidence during civil investigations which could result in the [custodial removal of children] was not clearly established when the conduct at

32

issue in this case occurred [in 2001], we affirm the district court's grant of summary judgment on the basis of qualified immunity.")

In sum, since <u>Fogarty-Hardwick</u> was decided in 2007, this Court has issued important rulings which change the qualified immunity analysis applicable to this case. This change in the law defeats Plaintiff's attempted invocation of offensive collateral estoppel, and the district court's application of collateral estoppel to bar Defendants from litigating this defense in this case.

> 2. <u>This Court has Held that Plaintiff's Fourteenth Amendment Claim was *Not Clearly Established* at the Time of the Incident in this Case.</u>

In 2010, this Court explained that at the time of the incidents giving rise to Plaintiff's claims here (1999-2000), the Constitutional rights violations she alleges were ***not*** "clearly established." Specifically, in <u>Costanich v. Department of Social and Health Services</u>, 627 F.3d 1101, 1114 (9th Cir. 2010), the Ninth Circuit announced that ***for the first time*** it was holding that a social worker making false accusations in connection with civil child removal proceedings violated a "clearly established" constitutional right. <u>Id.</u> at 1114 ("Although we conclude that, ***going forward***, officials who deliberately fabricate evidence in civil child abuse proceedings which result in the [violation of Fourteenth Amendment constitutional rights] are not entitled to qualified immunity, ***this right had not previously been***

33

***clearly established in the civil context***.")(Emphasis added).

Costanich, decided in 2010, held that although pursuing *criminal* charges based upon allegedly false information did violate clearly established Fourteenth Amendment constitutional rights, pursuing *civil* child removal proceedings – even when based on deliberately falsified evidence and statements by social service officials – did not violate "clearly established" constitutional rights. Id. at 1114, 1116 ("Because we conclude that the right not to be accused based on deliberately falsified evidence during civil investigations which could result in the [custodial removal of children] was not clearly established when the conduct at issue in this case occurred [in 2001], we affirm the district court's grant of summary judgment on the basis of qualified immunity.")

Here, Costanich mandates that Defendants be granted qualified immunity. In Costanich, the social worker allegedly engaged in the same conduct Plaintiff alleges in this case: "concealing evidence, misleading the dependency court, falsifying evidence, giving false testimony, failing to divulge exculpatory evidence, [and] committing perjury." (Complaint, ¶12, UF Nos. 14-17). Thus, as in Costanich, Defendants in this case are entitled to qualified immunity as a matter of law, as such conduct was ***not*** a violation of "clearly established" rights in the context of ***civil*** child removal proceedings in 2010, when Costanich was decided, and certainly not in 2001 when the underlying incidents in Costanich occurred.

Plaintiff's claims in this case are based on alleged actions which occurred, at the latest, in 2000, prior to the <u>Costanich</u> Court's 2010 decision, and even prior to the underlying incident in <u>Costanich</u> in 2001. Thus, <u>Costanich</u> dictates that qualified immunity bars individual liability here.

> 3.  <u>There was no well-established law giving Marcia Vreeken, Elaine Wilkins, and Helen Dwojak fair warning that their seizure of Plaintiff pursuant to a court order was unconstitutional under the Fourth Amendment.</u>

A plaintiff opposing qualified immunity must show that preexisting law provided the defendants with "fair warning" that their conduct was unconstitutional. <u>Hope v. Pelzer</u>, 536 U.S. 730, 739-740 (2002); <u>Saucier v. Katz, supra</u>, 533 U.S. at 209 (2001) (Officer immune from liability because "neither respondent nor the Court of Appeals has identified ***any case*** demonstrating a clearly established rule ***prohibiting the officer from acting as he did***....")(Emphasis added); <u>City & Cnty. of San Francisco v. Sheehan</u>, 135 S.Ct. 1765, 1774 (2015)("Public officials are immune from suit under 42 U. S. C. §1983 unless they have 'violated a statutory or constitutional right that was clearly established ***at the time of the challenged conduct***.'") (emphasis added) citing <u>Plumhoff v. Rickard</u>, 134 S. Ct. 2012 (2014).

Post-incident decisions are valueless in a qualified immunity analysis.

Rather, a Section 1983 plaintiff must show that the law was "clearly established" at the time the defendant officer was required to act. See, e.g., Robinson v. Solano County, 278 F.3d 1007, 1015 (9th Cir. 2002)("The conduct occurred in 1995, and the law at that time must be our guide."); Hammer v. Gross, 932 F.2d 842, 850 (9th Cir. 1991)(En banc)("At the time of Hammer's arrest, Graham v. Connor had not been decided. . . .Reasonable officers, however, cannot be required to have anticipated the ruling in Graham. We conclude as a matter of law, therefore, that officers Zatarain and Gross are immune from personal liability in damages for their actions. . ..") Thus, "[m]unicipalities do not have a duty to anticipate how appellate judges will apply maxims of constitutional adjudication and then provide training in accordance with potential theories." Habiger v. City of Fargo, 905 F. Supp. 709, 726 (D.N.D. 1995). In short, in resolving "clearly established" law issues, "an inquiring court must look back in time and conduct the juridical equivalent of an archeological dig." Savard v. Rhode Island, 338 F.3d 23, 28 (1st Cir.2003) (En banc).

Here, Plaintiff failed to cite to any pre-incident authority constitutionally prohibiting these individual Defendants from removing Plaintiff from her mother's custody, pursuant to a juvenile court order, following a hearing at which Plaintiff was represented by counsel who did not oppose the order. Rather, Plaintiff and the district court improperly relied on cases decided years after the incident herein to

find that qualified immunity did not apply.

The district court quoted <u>Greene</u> in denying Defendants qualified immunity:

> Defendants overlook an older Ninth Circuit case, *Greene v Camreta*. 588 F.3d 1011 (9th Cir. 2009), *vacated in part on other grounds by Camreta v. Greene*, 131 S. Ct. 2020 (2011). There, the plaintiff alleged her children were removed from her custody "pursuant to a Juvenile Court order triggered by an intentional misrepresentation" in an affidavit by the defendant social worker. *Id.* at 1033. The Ninth Circuit held that the plaintiff's "right to be free from deception in the presentation of evidence during a protective custody proceeding was clearly established at the time [defendant] filed his affidavit with the Juvenile Court" in 2000. *Id.* at 1035. Moreover, *Greene* reached this conclusion on the basis of previous case law establishing the basic "constitutional right to be free from the knowing presentation of false or perjured evidence." *Id.* (citations omitted).

(Civil Minutes, Document 68, at p. 13, AER 14). However, Plaintiff's and the

district court's reliance on <u>Greene v. Camreta</u>, 588 F.3d 1011 (9th Cir. 2009) was

misplaced.

First, <u>Greene</u> is not an older case; it was decided in 2009, nine years ***after***

Plaintiff was ordered removed from her mother by the juvenile court in 2000.

Second, this Court did ***not*** hold that the <u>Greene</u> plaintiff's "right to be free from

deception in the presentation of evidence during a protective custody proceeding

was clearly established at the time [defendant] filed his affidavit with the Juvenile

Court" **in 2000**, as the district court apparently believed. Rather, in <u>Greene</u>, the

social worker petitioned the juvenile court for a removal order "[o]n March 11,

***2003***," ***three years after*** Plaintiff's removal order came on February 17, 2000.

<u>Greene v. Camreta</u>, 588 F.3d 1011, 1018-1019 (9th Cir. 2009) (emphasis added);

(see also, 2/17/00 RT 30:21-23; 31:7-13). As such, Greene can only stand for the state of law in the year 2003, at best, and not 2000, when the underlying incident herein occurred.

Third, the cases relied on in Greene also post-date this incident. Greene relied on Devereaux v. Perez, 218 F.3d 1045, 1055-1056 (9th Cir. 2000) to demonstrate that "in the context of a child abuse proceeding that 'the constitutional right to be free from the knowing presentation of false or perjured evidence' is clearly established." Greene, supra, 588 F.3d at 1035. Devereaux, however, was decided in *__July__* 2000, several months *__after__* the removal order in this case. Greene also relied on Whitaker v. Garcetti, 486 F.3d 572, 581 (9th Cir. 2007), decided seven years *__after__* Plaintiff's removal here. And Whitaker's reliance on a host of other cases is also inapposite because all were decided after 2000.[10]

---

[10] It bears noting that these cases relied on in Greene have no factual resemblance to the case at hand—another reason why they cannot be said to have "clearly established" the law in the year 2000 such that these individual Defendants had "fair warning" that their removal of Plaintiff was unconstitutional. Hervey v. Estes, 65 F.3d 784 (9th Cir. 1995), Butler v. Elle, 281 F.3d 1014 (9th Cir. 2002), and Whitaker v. Garcetti, 486 F.3d 572 (9th Cir. 2007), all cited in Greene, all involved law enforcement officers submitting affidavits for warrant applications which contained allegedly false statements. Devereaux v. Perez, 218 F.3d 1045 (9th Cir. 2000) involved charging an individual with criminal child abuse based on false information. This case involves neither the prosecution of criminal child abuse, law enforcement, nor warrant applications. Thus, aside from the fact that some of these cases were decided after the incident herein, their factual dissimilarity to the facts herein also disqualifies them from the qualified immunity analysis in this instance. See, Saucier v. Katz, supra, 533 U.S. at 201-202 (Rejecting the argument that a Section 1983 plaintiff may overcome an assertion of qualified immunity by simply citing broadly-worded "reasonableness" principles.); Saucier v. Katz, supra, 533 U.S. at 209 (2001) (Officer immune from liability because "neither respondent nor the Court of Appeals has identified *__any case__* demonstrating a clearly established rule *__prohibiting the officer from acting as he did__*....")(Emphasis added); De la Cruz v. Kauai County, 279 F.3d 1064, 1069 (9th

Only one case cited in <u>Greene</u> pre-dated this incident.  <u>See</u>, <u>Snell v. Tunnell</u>, 920 F.2d 673, 676, 698 (10th Cir. 1990).  An out of circuit opinion, however, cannot circumvent binding precedent in this circuit.  Out of jurisdiction authority is not enough to "clearly establish" the law in a public employee's forum jurisdiction.  <u>See</u>, <u>Wilson v. Layne</u>, 526 U.S. 603, 617 (1999)(Granting qualified immunity where plaintiffs "have not brought to [the Court's] attention any cases of controlling authority ***in their jurisdiction*** at the time of the incident which clearly established the rule on which they seek to rely. . ..")(emphasis added).[11]  Thus, Plaintiff's reliance on <u>Snell v. Tunnell</u>, a case decided in the Tenth Circuit, is no help.  Accordingly, nothing in <u>Greene</u>, or the cases relied on therein, clearly established in 2000 that Defendants could not constitutionally, under the Fourth

---

Cir. 2002)( Where a Section 1983 plaintiff fails to "cit[e] any case" barring the officer's conduct, qualified immunity is required because "[i]t would not be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.")(Citations omitted); <u>City & Cnty. of San Francisco v. Sheehan</u>,135 S.Ct. 1765, 1775-1776 (2015) (Instructing courts "***not to define clearly established law at a high level of generality***.'")(internal citations omitted); <u>Krainski v. State ex rel. Bd. of Regents</u>, 616 F.3d 963, 970 (9th Cir. 2010)(Granting qualified immunity to government employee defendants where plaintiff "has been unable to present us with any binding or persuasive authority for the proposition that a substantive due process violation occurs when a university official places an unwarranted disciplinary notation on a transcript.")

[11] Other circuits are in accord with this proposition.  <u>See</u>, <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 251 (4th Cir. 1999)("If a right is recognized in some other [federal] circuit, but not in this one, an official will ordinarily retain the immunity defense."); <u>Ohio Civil Service Employees Ass'n v. Seiter</u>, 858 F.2d 1171, 1177 (6th Cir. 1988)(To find a clearly established right, "a district court must find binding precedent by the Supreme Court, its court of appeals or itself. In an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law."); <u>Lynch v. City of Boston</u>, 180 F.3d 1 (1st Cir. 1999)(A single decision from another court of appeals applying its own precedents is insufficient to meet the clearly established law requirement for purposes of overcoming qualified immunity.)

Amendment, remove Plaintiff from her mother pursuant to a court order.[12]

The district court's reliance on Greene over Costanich to find that qualified immunity did not apply to Defendants' conduct herein raises another important point relevant to the qualified immunity inquiry—the difficulty faced by trial courts in reconciling the two cases. As noted by the Supreme Court itself: "If judges . . . disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." Wilson v. Layne,

---

[12] Indeed, unlike the Greene case, and the authorities cited therein, this is not a case of judicial deception by an officer or social worker seeking to obtain a court order removing custody from a parent. A judicial deception claim necessarily requires the deception of a court in *seeking* and obtaining a court order via sworn affidavit. See e.g., Ramirez v. County of Los Angeles, 397 F. Supp. 2d 1208, 1221-1222 (C.D. Cal. 2005)("Plaintiff contends that the search of his residence violated the Fourth Amendment because it was carried out pursuant to an illegally obtained warrant. … Applying the standards set forth in Franks, we held in Branch that in a civil rights case where a claim of judicial deception is made, 'if an officer 'submitted an affidavit that contained statements he knew to be false or would have known to be false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, ... he cannot be said to have acted in a reasonable manner,' and the shield of qualified immunity is lost.'")(emphasis added), citing Branch v. Tunnell, 937 F.2d 1382 (9th Cir.1991); see also, United States v. Leftkowitz, 618 F.2d 1313, 1317 (9th Cir.1980)("To challenge a warrant affidavit, one 'must show (1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause.'").

And the cases relied upon in Greene are in agreement on this point—there is no judicial deception without *seeking* to obtain a court order by sworn affidavit. Greene, supra, 588 F.3d at 1030 (where the social worker sought an order of removal from the Juvenile Court, and filed a sworn affidavit, which after review by the Juvenile Court, issued a protective custody order) citing Devereaux v. Perez, 218 F.3d 1045 (9th Cir. 2000)("if an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth, . . . he cannot be said to have acted in an objectively reasonable manner, and the shield of qualified immunity is lost."); and Snell v. Tunnell, 920 F.2d 673 (10th Cir. 1990) (holding social workers who deliberately fabricated evidence of child sexual abuse to secure a removal order from the court not entitled to qualified immunity).

Here, Defendants *never sought* a removal order via affidavit or otherwise. Quite the contrary, it is undisputed that Defendants recommended to the court that Plaintiff *not* be removed from her mother's custody. Therefore, Defendants cannot be said to have engaged in any judicial deception in seeking Plaintiff's removal.

526 U.S. 603, 618 (1999); Lum v. Jensen, 876 F.2d 1385, 1389 (9th Cir. 1989)

("Though they are charged with knowledge of constitutional developments,

government officials are not required to predict the future course of constitutional

law.")

Here, the district court observed the apparent conflict it and other trial courts

were having:

> To be sure, these cases are difficult to reconcile, a task made
> more difficult because *Costanich* fails to distinguish or
> otherwise reference *Greene*. *See Mann v. Cnty. of San Diego*,
> No. 3:11-CV-0708-GPC-BGS, 2013 WL 4046642, at *13 (S.D.
> Cal. Aug. 8, 2013 (finding *Greene* "at apparent odds with the
> *Costanich* holding that the similar right to be free from
> fabrication and/or falsification of evidence in a civil proceeding
> was not clearly established until 2010,"…")

(Civil Minutes, Document 68, at p. 13, AER 14). [13]

As demonstrated, even trial courts are having difficulty resolving the issue

of what law was clearly established at the time of the subject incident.   Unresolved

issues, subject to judicial debate, are never enough to overcome qualified

immunity. See, Wilson v. Layne, 526 U.S. 603, 618 (1999) ("If judges . . . disagree

on a constitutional question, it is unfair to subject police to money damages for

picking the losing side of the controversy."); see also, Malley v. Briggs, 475 U.S.

335, 341 (1986) ("If officers of reasonable competence could disagree on the issue

[whether a chosen course of action is constitutional], immunity should be

---

[13] See also, Marshall v. County of San Diego, 238 Cal.App.4th 1095, 1112-1115 (2015)(Discussing and attempting to reconcile the apparent conflict between Greene and Costanich.)

recognized.")

In sum, there simply was no clear body of law under either the Fourth or Fourteenth Amendments forbidding Defendants' conduct. Plaintiff did not cite any authority prohibiting Defendants from removing Plaintiff as they did in 2000, and none of the post-incident cases relied upon by Plaintiff and the district court point to any pre-2000 authority which would have put these individual Defendants on notice that they could not constitutionally act as they did. Therefore, at a minimum, qualified immunity shields their conduct. See, Somers v. Thurman, 109 F.3d 614, 621 (9th Cir. 1997) ("Government officials are not required to anticipate subsequent legal developments, and ... cannot fairly be said to 'know' the law unless it is sufficiently unmistakable from authoritative sources. ***It is not even enough to demonstrate that the constitutional norm relied on is the logical extension of principles and decisions already on the books.***")(Emphasis added.) This Court should therefore reverse the district court's denial of qualified immunity.

## B. Marcia Vreeken, Elaine Wilkins, and Helen Dwojak are entitled to absolute immunity for performing quasi-prosecutorial and quasi-judicial functions before the Juvenile Court.

"[S]ocial workers have absolute immunity when they make 'discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take

custody away from parents.'" <u>Beltran v. Santa Clara County</u>, 514 F.3d 906, 908 (2007)(en banc), citing <u>Miller v. Gammie</u>, 335 F.3d 889, 896 (9th Cir. 2003). Social workers are also entitled to absolute immunity for testimony given during dependency proceedings and custody hearings. <u>See</u>, <u>Meyers v. Contra Costa County Dep't of Social Services</u>, 812 F.2d 1154, 1156 (9th Cir. 1987). A social worker is further entitled to absolute quasi-judicial immunity when acting as an arm of the court. <u>See</u>, <u>Demoran v. Witt</u>, 781 F.2d 155, 156–158 (9th Cir. 1986)(probation officers preparing presentencing reports covered by absolute quasi-judicial immunity doctrine). In sum, "social workers are entitled to absolute immunity in performing quasi-prosecutorial [and/or quasi-judicial] functions connected with the initiation and pursuit of child dependency proceedings." <u>Meyers v. Contra Costa County Dep't of Social Services</u>, <u>supra</u>, 812 F.2d at 1157; <u>see</u>, <u>Demoran v. Witt</u>, <u>supra</u>, 781 F.2d at 156–158 (9th Cir. 1986); <u>Tamas v. Dep't of Soc. & Health Servs.</u>, 630 F.3d 833, 842 (9th Cir. 2010) citing <u>Caldwell v. LeFaver</u>, 928 F.2d 331, 333 (9th Cir. 1991) (naming advocacy to the decisionmaker and execution of a court order as examples).

Whether an official may claim absolute immunity depends on the nature of the *function* carried out, not the job title of the official. <u>See</u>, <u>Forrester v. White</u>, 484 U.S. 219, 227 (1988) ("[I]mmunity is justified and defined by the functions it protects and serves, not by the persons to whom it attaches.") Under this

"functional approach," the Supreme Court focuses upon the general nature of the function the official carried out – and not the specific conduct carried out on the occasion in question – to determine whether an official is entitled to absolute immunity. See, Mireles v. Waco, 502 U.S. 9, 14 (1991) (Courts must look "to the particular act's relation to a general function normally performed by a judge.")

Courts are in agreement that social services officials who initiate, prepare, and present child abuse, neglect, and dependency proceedings carry out prosecutorial functions and are protected by absolute prosecutorial immunity. Miller v. Gammie, 335 F.3d 889 (9th Cir. 2003) (en banc) (absolute immunity protected Social Worker's decision to initiate proceedings to make child ward of state); Coverdell v. Department of Soc. Servs., 834 F.2d 758 (9th Cir. 1987) (social service caseworkers who initiated and pursued child dependency proceeding); Meyers v. Contra Costa County Dep't of Soc. Servs., 812 F.2d 1154 (9th Cir. 1987)(same). Applied here, Defendants are absolutely immune for the alleged "baseless" filing of dependency petitions. (Complaint, ¶¶ 21, 22, AER 2241-2241). Additionally, Defendants here are entitled to absolute immunity for their presentations of evidence to the juvenile court, whether characterized by Plaintiff as "concealing evidence," "misleading the dependency court," or "failing to divulge exculpatory evidence." (Complaint, ¶¶ 36, 37, 38, 40, AER 2244-2245). Prosecutors are entitled to absolute immunity when "appearing before a judge and

presenting evidence…[which] clearly involve the prosecutor's 'role as advocate for the State,' rather than his role as 'administrator or investigative officer…'". Burns v. Reed, 500 U.S. 478, 491 (1991). This is because "appearing [before the court] is 'intimately associated with the judicial phase of the [] process." Id. at 492. This same immunity extends to social workers when performing the similar function of advocacy to the decision maker. Tamas v. Dep't of Soc. & Health Servs., 630 F.3d 833, 842 (9th Cir. 2010) citing Caldwell v. LeFaver, 928 F.2d 331, 333 (9th Cir. 1991) (naming advocacy to the decisionmaker and execution of a court order as examples).

Here, in making the statements (or failing to make statements) to the juvenile court for which Plaintiff takes issue, Vreeken, Wilkins, and Dwojak were similarly acting in a quasi-prosecutorial fashion by advocating before the juvenile court. Their appearances in court were "intimately associated with the judicial phase of the process," thus making them absolutely immune. Even if Plaintiff believes that Defendants' statements were "fabricated," presentation of even knowingly false evidence is also shielded by absolute immunity. See, Milstein v. Cooley, 257 F.3d 1004, 1012 (9th Cir. 2001) (Holding that a prosecutor's use of fabricated evidence in securing an indictment was entitled to absolute immunity).

Additionally, any alleged suppression of exculpatory evidence by Defendants is also entitled to absolute immunity. "A prosecutor's decision not to

preserve or turn over exculpatory material before trial, during trial, or after

conviction …is…an exercise of the prosecutorial function and entitles the

prosecutor to absolute immunity from a civil suit for damages." Broam v. Bogan,

320 F.3d 1023, 1030 (9th Cir. 2003). Thus, social workers, who, as Plaintiff

alleges, suppress exculpatory evidence, are likewise protected by absolute

immunity.

Similarly, Defendants Vreeken and Dwojak are also absolutely immune for

the preparation and presentation of unsworn court reports to the juvenile court.

(UF No. 15); Cf., Kalina v. Fletcher, 522 U.S. 118, 130-131 (1997)(Prosecutor

entitled to absolute immunity for presentation of an unsworn certification

summarizing the evidence supporting the charges); Milstein v. Cooley, 257 F.3d

1004, 1012 (9th Cir. 2001) ("Kalina indicated that but for counsel personally

swearing to the facts contained in her certification supporting the motion for an

arrest warrant, she would have been protected by absolute immunity.")

Likewise, absolute immunity insulates Defendants from civil liability for the

other acts Plaintiff alleges to be unconstitutional. Specifically, the development

and implementation of the Voluntary Case Plan is subject to absolute immunity

under Rippy v. Hattaway, 270 F.3d 416 (6th Cir. 2001) (Social Workers

formulated and implemented child care plan for parents as arm of court and were

therefore protected by absolute immunity). Similarly, Defendants' role in advising

the Court as to the best interests of the children is immunized by absolute immunity. See, Dock v. State of Nevada, 2010 WL 5441642, at *5–6 (D. Nev. 2010) (Holding that child protective service workers have absolute immunity from suit when they are providing information to the court and engaging in duties that are integral to the court's decision-making processes).

Further, the seizure of Plaintiff pursuant to the juvenile court's order is entitled to absolute immunity because such act was taken "under the command of a court decree or explicit instructions from a judge." Coverdell v. Dep't of Social & Health Servs., 834 F.2d 758, 764-765 (9th Cir.1987) ("The same concerns dictate that a CPS worker be accorded absolute quasi-judicial immunity from liability for damages stemming from the worker's apprehension of a child pursuant to a valid court order."); Tamas v. Dep't of Soc. & Health Servs., 630 F.3d 833, 842 (9th Cir. 2010) citing Caldwell v. LeFaver, 928 F.2d 331, 333 (9th Cir. 1991) (advocacy to the decisionmaker and ***execution of a court order*** are protected by absolute immunity). As noted previously by this Court, "[t]he fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised." Coverdell, supra, at 764-765.

Finally, the Supreme Court has held that a witness has absolute immunity with respect to *any* claim based on the witness' trial testimony. Briscoe v. LaHue, 460 U.S. 325, 343 (1983) ("Subjecting . . . police officers to damages liability

under § 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties."; absolute witness immunity accorded police officer witnesses). Courts have similarly held that social workers are also accorded absolute witness immunity. See, e.g., Dornheim v. Sholes, 430 F.3d 919 (8th Cir. 2005) (Social worker was entitled to absolute immunity from civil rights liability for his testimony as witness in child custody dispute). Therefore, Plaintiff's claims that Defendants were lying to the juvenile court while giving sworn testimony fails here.

As demonstrated, contrary to the district court's ruling, absolute immunity does apply to social workers performing quasi-prosecutorial and quasi-judicial functions as the individual Defendants did here. Tamas v. Dep't of Soc. & Health Servs., 630 F.3d 833, 842 (9th Cir. 2010) citing Caldwell v. LeFaver, 928 F.2d 331, 333 (9th Cir. 1991) (naming advocacy to the decisionmaker and execution of a court order as examples). While it is true that Plaintiff's lawsuit involves more than just the initiation of dependency proceedings, each of the alleged acts for which Plaintiff sues the individual social workers—preparing and presenting unsworn court reports, presenting evidence and advocating before the juvenile court, removing Plaintiff from her mother's custody pursuant to a court order, and testifying as witnesses in juvenile court—are all within the functions protected by absolute immunity. Accordingly, the district court's determination that "absolute

48

immunity does not apply" in this case is erroneous, and should be reversed.

## VI.  CONCLUSION

For all the foregoing reasons, the district court should have found that these Defendants were entitled to qualified and absolute immunities for their actions. The district court's failure to do so constitutes reversible error.  This Court should order reversal, and dismiss Plaintiff's section 1983 claims against Marcia Vreeken, Elaine Wilkins, and Helen Dwojak (by and through her Estate).

DATED:  November 23, 2015          Respectfully submitted,
**LYNBERG & WATKINS**
A Professional Corporation


By:   */s/  Norman J. Watkins*
**NORMAN J. WATKINS**
**PANCY LIN**
Attorneys for Defendant County of
Orange, and Defendants/Appellants
Marcia Vreeken, Elaine Wilkins, and
The Estate of Helen Dwojak

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. 32(A)(7)(C) AND

## CIRCUIT RULE 32-1

We certify that the foregoing **DEFENDANTS'/APPELLANTS' MARCIA VREEKEN'S, ELAINE WILKINS', AND THE ESTATE OF HELEN DWOJAK'S OPENING BRIEF** is double spaced and utilizes a proportionately-spaced 14-point Times New Roman typeface. This motion comprises a total of 13,357 words, as calculated by the Microsoft Word 97 word processing system, the means by which it was prepared.

DATED: November 23, 2015       Respectfully submitted,
**LYNBERG & WATKINS**
A Professional Corporation


By: */s/ Norman J. Watkins*
    **NORMAN J. WATKINS**
    **PANCY LIN**
    Attorneys for Defendant County of
    Orange, and Defendants/Appellants
    Marcia Vreeken, Elaine Wilkins, and
    The Estate of Helen Dwojak

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, **DEFENDANTS/APPELLANTS**

**MARCIA VREEKEN, ELAINE WILKINS, AND THE ESTATE OF HELEN**

**DWOJAK** are unaware of any related cases pending before this Court.

DATED:  November 23, 2015  Respectfully submitted,
           **LYNBERG & WATKINS**
           A Professional Corporation


By: */s/ Norman J. Watkins*
   **NORMAN J. WATKINS**
   **PANCY LIN**
   Attorneys for Defendant County of
   Orange, and Defendants/Appellants
   Marcia Vreeken, Elaine Wilkins, and
   The Estate of Helen Dwojak

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 23, 2015, I electronically filed the

**DEFENDANTS'/APPELLANTS' MARCIA VREEKEN'S, ELAINE**

**WILKINS', AND THE ESTATE OF HELEN DWOJAK'S OPENING BRIEF**

with the Clerk of the Court for the United States Court of Appeals for the Ninth

Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.

DATED:  November 23, 2015

By:  */s/  Pia Boreto-Mosh*
        **PIA BORETO-MOSH**