No. 15-55563

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

PRESLIE HARDWICK,

Plaintiff and Appellee,

v.

COUNTY OF ORANGE,

Defendant,

and

MARCIA VREEKEN, et al.,

Defendants and Appellants.

\*\*\*

On Appeal from the United States District Court
For the Central District of California
Case No. SACV 13-1390 JLS (ANx)
The Hon. Josephine L. Staton, Judge Presiding

## PLAINTIFF/APPELLEE PRESLIE HARDWICK'S
## ANSWERING BRIEF

ROBERT R. POWELL (SBN 159747)
DENNIS R. INGOLS    (SBN 236458)
LAW OFFICES OF ROBERT R. POWELL
925 West Hedding Street
San Jose, California  95126
Telephone:  (408) 553-0200
Facsimile:   (408) 553-0203
Attorneys for Plaintiff/Appellee

# **TABLE OF CONTENTS**

Table of Authorities ................................................................. iii

I.  STATEMENT OF THE CASE ..........................................................1

   A. Statement of Facts...............................................................3

      i.  Summary of the Claims and Results In Deanna's Related Case .............3

      ii.  Litigation History In Deanna's Related Case ..........................4

      iii.  Facts Supporting The Jury Verdicts in Deanna's Related Case ..........5

II.  ARGUMENT ........................................................................14

   A. Collateral Estoppel Applies to Establish Each of the Required
      Elements of Each of Preslie's Claims Against Defendants Vreeken,
      Dwojak, and Orange County ....................................................14

      i.  The Requisite Elements of Collateral Estoppel Are Met With
          Regard to Vreeken, Dwojak, and Orange County ..........................15

      ii.  Issues Already Adjudicated in Deanna Fogarty's Earlier Case as to
           Which Collateral Estoppel Should Apply................................16

      iii.  The Misdeeds of the Individual Defendants Deprived Preslie of a
            Fundamental Constitutional Right ....................................17

   B. Defendants Are Not Entitled to Qualified Immunity ...........................19

      i.  Constitutional Rights May Be Clearly Established by State Court
          Decisions, Unpublished Trial Court Decisions, Agency Training,
          and Common Sense .....................................................20

      ii.  Preslie's Right to Be Free From Judicial Deception Was Clearly
           Established ..........................................................22

      iii.  Appellants Do Not Contest They Deceived the Juvenile Court ..........22

i

iv. Appellants' Judicial Deception Violated Preslie's Fourth Amendment Rights Against Unwarranted Weizure ..............................23

v. Preslie's Right Not to Be Seized and Detained Based on Judicial Deception Was Clearly Established Before February 17, 2000 ...........24

vi. Appellants' Lies Were Material............................................................28

vii. Preslie's Fourteenth Amendment Right to Familial Association Was Clearly Established Prior to February 17, 2000....................................30

viii. Costanich Does Not Apply to Preslie's Claims That the Order to Seize Her Was Obtained by Judicial Deception ...................................31

ix. The State Appellate Court Has Already Determined That These Social Workers Are Not Entitled to Qualified Immunity.....................32

C. Absolute Immunity Does Not Apply

i. Appellants Are Sued Based on Their Investigatory and Reporting Functions.................................................................................................34

III. CONCLUSION ..............................................................................................36

# **TABLE OF AUTHORITIES**

*Cases:*

*Aguilar v. Atlantic Richfield Co.,* 25 Cal. 4th 826 (2001) .........................................29

*Allen v. McCurry,* 449 U.S. 90 (1980)...................................................................15

*Anderson v. Creighton,* 483 U.S. 635 (1987) ...........................................................17

*Babcock v. Tyler*, 884 F.2d 497 (9th Cir.1989) ...................................................... 33

*Baker v. County of Los Angeles,* CV 11-5550-GHK (C.D. Cal. 2012) ...................19

*Beltran v. Santa Clara County*, 389 F. App'x 679 (9th Cir. 2010) ........................ 19

*Beltran v. Santa Clara County,* 514 F.3d 906 (9th Cir. 2008) ................................ 34

*Beltran v. Santa Clara County,* 491 F.3d 1097 (9th Cir. Cal. 2007).......................33

*Branch v. Tunnell* , 937 F.2d 1382 (9th Cir. 1991)......................................19, 20, 25

*Briscoe v. Lahue,* 460 U.S. 325 (1983)...................................................................35

*Burke v. County of Alameda*, 586 F.3d 725 (9th Cir. 2009) ...................................28

*Butler v. Elle*, 281 F.3d 1014 (9th Cir. 2002) ...................................................19, 25

*Camreta v. Greene,* 131 S. Ct. 2020 (U.S. 2011) ...................................................24

*Castillo v. City of Los Angeles*, 92 Cal. App. 4th 477 (2001) ................................15

*Catsouras v. Dept. of Calif. Hwy. Patrol*, 181 Cal. App. 4th 856 (2010) ..............16

*Consumer Cause, Inc. v. Smilecare,* 91 Cal. App. 4th 454 (2001)..........................29

*Coverdell v. Dep't of Soc. & Health Servs.,* 834 F.2d 758 (9th Cir. 1987).............33

*Costanich v. Dep't of Soc. & Health Servs.,* 627 F.3d 1101 (9th Cir. 2009) .............

iii

...................................................................... 20, 23, 25, 26, 27, 30, 31, 34

*Cunningham v. Gates,* 229 F.3d 1271 (9th Cir. 2000)............................................. 36

*Devereaux v. Abbey,* 263 F.3d 1070 (9th Cir.2001) ...............................................21, 33

*Devereaux v. Perez*, 218 F.3d 1045 (9th Cir. 2000) ........................................ 17, 24

*Drummond v. City of Anaheim,* 343 F.3d 1052 (9th Cir. 2003) ...............................21

*Elder v. Holloway,* 510 U.S. 510 (1994) ...........................................................20, 21

*Fogarty-Hardwick v. County of Orange,* 2010 Cal. App. Unpub. LEXIS 4436 (Cal. App. 4th Dist. June 14, 2010) ..................................................................1, 2, 32

*Franks v. Deleware*, 438 U.S. 154 (1978) ..........................................................19, 23

*Giebel v. Sylvester,* 244 F.3d 1182 (9th Cir. 2001) ...................................................21

*Greene v. Camreta,* 588 F.3d 1011 (9th Cir. Or. 2009)............. 23, 24, 25, 27, 28, 31

*Hamilton v. Ayers,* 458 F. Supp. 2d 1075 (E.D. Cal. 2006) .............................29, 30

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982) ..........................................................1, 32

*Hervey v. Estes,* 65 F.3d 784 (9th Cir. 1995)................................................19, 20, 25

*Hope v. Pelzer*, 536 U. S. 730 (2002) .....................................................................21

*Johnson v. Riverside Healthcare Sys.*, 433 Fed.Appx. 610 (9th Cir. 2011)............15

*Kerkeles v. City of San Jose*, 199 Cal. App. 4th 1001 (2011) ....................................3

*K. H. v. Morgan*, 914 F. 2d 846 (CA7 1990)..........................................................21

*KRL v. Moore,* 384 F.3d 1105 (9th Cir. Cal. 2004) ...................................................28

*Limone v. Condon*, 372 F.3d 39 (1st Cir. 2004) ......................................................17

*Liston v. County of Riverside*, 120 F.3d 965 (9th Cir. 1997)....................................19

*Lucido v. Superior Court*, 51 Cal. 3d 335 (1990) ...............................................14, 15

*May v. Anderson*, 345 U.S. 528, 73 S.Ct. 840 (1953) ...........................................26

*Marsh v. San Diego County,* 432 F. Supp. 2d 1035 (S.D. Cal. 2006) ....................36

*Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625 (1923) ...................................26, 30

*Meyers v. Contra Costa County Dep't of Social Servs.*, 812 F.2d 1154 (9th Cir.1987) .........................................................................................................33

*Miller v. Gammie,* 335 F.3d 889 (9th Cir. 2003) .......................................................33

*Mooney v. Holohan* 294 U.S. 103 (1935) .................................................................32

*Napue v. Illinois* 360 U.S. 264 (1959) .....................................................................32

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) ..............................................15

*Pierce v. Soc'y of Sisters,* 268 U.S. 510, 45 S. Ct. 571 (1925) ................................30

*Pyle v. Kansas* 317 U.S. 213 (1942) ........................................................................32

*Rogers v. County of San Joaquin,* 487 F.3d 1288 (9th Cir. 2007) ...........................22

*Roos v. Red*, 130 Cal. App. 4th 870 (2005) .............................................................15

*Rosenbaum v. Washoe Cnty*, 2011 U.S. App. LEXIS 17460 (9th Cir. 2011) .........17

*Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388 ..........................................26, 30

*Saucier v. Katz,* 533 U.S. 194 (U.S. 2001) .............................................19, 22, 23, 24

*Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110 (1942) ....................................26

*Snell v. Tunnell,* 920 F.2d 673 (10th Cir. 1990) .....................................23, 24, 33, 34

*Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208 U.S.Ill. (1972) ........................26, 30

*Tamas v. Dep't of Soc. & Health Servs.,* 630 F.3d 833 (9th Cir. 2010) .................34

*Tichinin v. City of Morgan Hill*, 177 Cal. App. 4th 1049 (2009) ............................16

*Troxel v Granville*, 530 US 57 (2000) ......................................................................17

*United States v. Lanier,* 520 U.S. 259 (U.S. 1997)....................................................21

*Wallis v. Spencer,* 202 F.3d 1126 (9th Cir. 2000) .............................................22, 30

*Whitaker v. Garcetti,* 486 F.3d 572 (9th Cir. 2007)....................................................23

*White v. City of Pasadena*, 671 F.3d 918 (9th Cir. 2012).........................................15

*Wilson v. Layne*, 526 U. S. 603 (1999) .............................................................21, 22

## *Federal Statutes*

42 U.S.C. §1983 ...................................................................................16, 17, 19, 28

# I.    STATEMENT OF THE CASE

"In [*Fogarty-Hardwick v. County of Orange et al*.], the jury specifically concluded that Vreeken and Dwojak lied, falsified evidence, and suppressed exculpatory evidence – all of which was material to the dependency court's decision to deprive Fogarty-Hardwick of custody – and that they did so with malice. These findings are clearly sufficient to satisfy the Supreme Court's definition of circumstances in which 'qualified immunity would *not* be available.'" *Fogarty-Hardwick v. County of Orange,* 2010 Cal. App. Unpub. LEXIS 4436 (Cal. App. 4th Dist. June 14, 2010), citing *Harlow v. Fitzgerald,* 457 U.S. 800, 815 (1982)). (SER, 1-25, 26-60, 477-478, 1279-1292)[1]

Deanna Fogarty (f.k.a Fogarty-Hardwick) has two daughters, Preslie and Kendall Hardwick.  This case is brought by Plaintiff / Appellee Preslie, and is based upon exactly the same facts and law as Deanna's case. Defendants/Appellants ignore the relationship between this case and the prior judgment in *Fogarty-Hardwick*. They also ignore the evidence presented there to establish Vreeken's and Wilkins's initial misconduct on February 17, 2000; and, Vreeken's and Dwojak's continuing course of misconduct thereafter. Defendants attempt to weave a wholly different story focused on later events,

---

[1] Unless otherwise indicated, all citations to evidence refer to Appellee's Supplemental Excerpts of Record ("SER"). Any citations to Appellant's Excerpts of Record shall be designated "AER".

calculated to distract the Court from the questions presented, which are: 1) Was it constitutional for Defendants to engage in judicial deception which deprived Preslie of her rights of familial association? And, 2) was the law at the time clearly established?  Questions regarding absolute immunity are treated separately.

Defendants fail to meet their burden. They assert as "material fact" mere arguments, not "facts." Preslie's <u>accusations</u>, *i.e.*, that Defendants lied to the juvenile court to take, and then keep her from her mother, have already been proved once in the *Fogarty-Hardwick* matter. The same evidence proffered in that case, when viewed in the light most favorable to Preslie, *cannot* yield a different result.

The District Court ruled that collateral estoppel precluded the qualified immunity defense, but not the absolute immunity defense.  Even if this Court finds collateral estoppel does not bar Defendants' qualified and absolute immunity defenses, there are significant flaws with both defenses.  The appeal should be denied in its entirety.

Preslie's complaint only states causes of action under federal law. Her claims are based on the social workers' deceptive acts in juvenile dependency court proceedings. Her claims are based completely on the facts proved to the jury in her mother's case. Ms. Vreeken and Ms. Dwojak's proven misconduct

2

came in the form of both active reporting of false "facts," and active suppression of exculpatory facts. Either form of misconduct is actionable under federal law. (See, e.g., *Kerkeles v. City of San Jose*, 199 Cal. App. 4th 1001, 1008 (2011)).

A. **Statement of Facts**

i. *Summary of the Claims and Results in Deanna's Related Case*

Deanna Fogarty-Hardwick brought suit against these same Defendants in February 2001, because these social workers lied to the juvenile court, fabricated evidence, and suppressed exculpatory evidence, all of which triggered the forceful removal and continued detention of Deanna's minor daughters, Preslie and Kendall, from her care. (SER 1-25, 31, 278-478, 870-876, 952-1007, 1257-1260) After unlawfully taking her children, social workers engaged in a malicious effort to cover-up their own wrongdoing and force Deanna to submit to their whims without question. (SER 31-32, 199-200, 1255-1278)

After hearing approximately five weeks of testimony, the jury concluded that Vreeken's and Dwojak's misconduct was malicious and material to the dependency court's decision to remove Preslie from Deanna's care. (SER 1-25, 28, 31-34, 49) In separate special verdicts the jury found that Vreeken's and Dwojak's conduct occurred "as a result of the official policy or custom of the County of Orange" and that the County was "deliberately indifferent to the need to train and/or supervise its employees adequately" – both of which were the

3

cause of Deanna's – and therefore implicitly, Preslie's – loss of familial association. (SER 1-25, 26-60, 201-217, 870-876, 952-1007) These findings were supported by substantial evidence. (SER 42-43, 46, 49-50)

### ii. *Litigation History in Deanna's Related Case*

Deanna's case was aggressively litigated by these identical defendants. After Deanna filed suit Defendants demurred. There they argued that Deanna's action was barred by collateral estoppel and absolute immunity. (SER 32-34) The trial court sustained that demurrer in its entirety without leave to amend. Deanna appealed. (SER 32-34) The Court of Appeal reversed the dismissal of Deanna's federal civil rights claims. (SER 32-34) The case was remanded to the trial court for further proceedings. (SER 32-34)

On remand, the County pleaded the affirmative defense of qualified immunity but not absolute immunity. (SER 34) The parties then conducted extensive discovery. In April 2006 the County moved for summary judgment, arguing that (1) all of the wrongful conduct alleged against the social workers qualified as "quasi-prosecutorial" and was thus protected by absolute immunity; and, (2) the alleged conduct fell within the absolute testimonial privilege. (SER 34) Deanna opposed the motion. (SER 34) The trial court denied Defendants' motion. (SER 34) In December 2006, on the eve of trial, Defendants Vreeken and Dwojak sought leave to amend their answer to include the defense of

4

"absolute, judicial, prosecutorial and testimony privilege of federal law." The trial court denied the motion. (SER 34)

At trial the jury awarded Deanna $117,386 against Vreeken, $273,900 against Dwojak, $2,260,785 against the County "as a result of [its] official policy or custom[s]," and $2,260,785 as a separate measure of damages arising from the County's deficient training and supervision. (SER 34-36) Vreeken, Dwojak, and Orange County appealed. (SER 61-122, 123-176) The Court of Appeal reversed the injunction against the County, but affirmed the remainder of the judgment in its entirety. (SER 60)

### iii. *Facts Supporting the Jury Verdicts in Deanna's Related Case*

*1. Preslie's Family* – Preslie was born on September 9, 1993. (SER 503, 1038) Deanna was breastfeeding Preslie. The children had a loving emotional bond with their mother. (SER 662-664, 1057)

*2. The Divorce* – Deanna and Cary divorced in 1998. (SER 505-514) Deanna retained primary custody. (SER 519-520, 650) Preslie seemed angry, and struggled with the transition. (SER 515-516, 519, 660-661) Deanna enrolled the girls in therapy with Dr. Marjorie Mitchell. (SER 516-618, 837-839)

*3. Dr. Mitchell Reports Suspected Abuse to CPS* – After one of her sessions with Kendall, Dr. Mitchell made a suspected child abuse report to

Orange County's Child Abuse Registry "hotline." (SER 521-523, 525, 839-841) A social worker investigated. (SER 523-524, 653-654) That worker determined it was safe for the children to remain with Deanna. (SER 653-657, 659) Rachel Davis, the investigating social worker, completed a thorough investigation and submitted her Court Report on December 21, 1999. (SER 529-530, 658-659, 681, 724-725) She recommended the children remain with Deanna because there was a strong bond between them. (SER 662-668) Orange County filed a dependency petition on November 16, 1999. (SER 497-498, 526-527, 1030-1036) It was known from the beginning that there was no evidence to support the allegations against Deanna. (SER 664, 686, 700-701, 726-728, 811, 822-824, 857-859)

> 4. *Kendall Refuses to Visit Her Father and Rachel Davis Devises a Plan to Address the Situation* – Cary, Preslie's father, was allowed only supervised visits. (SER 531) At times the children refused to visit. (SER 531-532) Deanna was not comfortable "forcing" visits. (SER 669-670) Rachel Davis devised a plan to deal with the issue. Under the plan, Deanna was to transport the children to visits. The children were not to be forced or pressured to visit. If they did not want to visit with Cary, they were to speak to the visitation monitor alone. (SER 531-533, 671-673) These instructions were documented in Court Reports filed by Davis. (SER 671-673) Davis also discussed the plan with

Kendall, who agreed to abide by it. (SER 671-673) Everyone followed Davis's

plan. (SER 531-533, 671-672) Later, Dr. Mitchell told Davis that Hector

Delgadio, the visitation monitor Cary hired, allowed Cary to pressure Kendall to

recant her abuse allegations during a monitored visit. (SER 1078-1079) To

protect Kendall and assure neutrality, Davis relieved Delgadio as a monitor.

(SER 534-540, 545-546, 675-678)

     *5. Vreeken Replaces Davis as the Primary Social Worker* – On

January 26, 2000, Davis told Deanna the case was being transferred to

Defendant Vreeken. (SER 678-679, 906-907) All necessary investigation was

completed. Vreeken's job was to babysit the case, "making sure the visitation

[with dad] went smoothly." (SER 718, 720-723, 907-908, 922)

     On February 13, 2000, Deanna took the children to visit with

Cary. Surprisingly, Delgadio was the monitor. Kendall reacted negatively and

refused to visit. Preslie saw Kendall's reaction and didn't want to participate

after that. (SER 541-542, 545) Deanna followed Rachel Davis's plan as

instructed. Kendall still refused to visit Cary. (SER 541-547) Deanna met her

obligations under the 'Davis' plan, and Vreeken knew it. (SER 547, 943-947)

     *6. Vreeken Intimidates the Children and Accuses Deanna* – A

volatile incident occurred on February 15, 2000 at the Agency office. (SER 547-

563, 568-584) Deanna brought Kendall and Preslie to visit Cary. The visit went

well; the children were happy and in good spirits. (SER 687-689) Immediately

after Cary left, Vreeken spoke with the girls. (SER 689-691) She told Kendall

she *must* visit with her father. (SER 561) Kendall got frightened and started

crying. Rosy Reales (the family's longtime nanny) saw Kendall crying while

Vreeken was speaking to her. (SER 691, 785-787) Preslie escaped and ran away

to find Deanna. Wilkins went after Preslie, leaving Vreeken alone with Kendall.

(SER 556-557, 692-694) Preslie ran into Deanna's interview room, afraid, upset

and crying. She told Deanna what happened. (SER 556-557) Deanna became

upset and began to cry. (SER 731) Wilkins arrived on the scene. She saw

Preslie, Deanna, and Rosy all upset and crying. (SER 557-558, 729-731)

Vreeken and Kendall arrived next. Kendall's face was discolored, her eyes were

puffy; she looked like she had been crying. (SER 557, 559-560) Vreeken

blocked the doorway. (SER 559)

Deanna and Vreeken exchanged words; Vreeken was perturbed.

(SER 561) Vreeken admitted she "told [the girls] if they didn't visit with their

father, the judge was going to put them in a home." (SER 561, 930-931)

Vreeken knew a social worker should not tell a child that a judge is going to put

them in a home if they don't visit with a parent alleged to have sexually abused

them. (SER 673-674) Kendall was frightened. (SER 585) The exchange became

loud and animated. (SER 625-626) Deanna asked: "Did I do something wrong? I

8

can't help but feel like I'm being treated like a criminal." (SER 575) Vreeken

replied, "What's the matter?  Am I not warm and fuzzy enough for you?" (SER

575-576) Deanna pleaded with Vreeken: "[P]lease, I want to follow your

directions. I want to do what's right for my kids, and I don't want to lose them."

Vreeken replied: "You better call your attorney." (SER 576)

> *7.  The Coverup: Vreeken  Lies in Court on February 17, 2000,*
*Triggering Preslie's "Forthwith" Removal From Her Mother and Family Home*

– Vreeken discussed the incident with her supervisor, Helen Dwojak, on

February 16, 2000, the day before filing her report to the juvenile court.  In her

court report on February 17, 2000, Vreeken failed to disclose her threats to the

children, the resulting conflict, and that the February 13th visit was not

"missed" but rather had been terminated by the monitor because of Kendall's

negative reaction to him. (SER 937-941, 1087-1091) Vreeken only reported the

fact of the "missed" February 13th visit, missed phone calls, and how "well" the

visit with Cary went on February 15th. (SER 937-941, 1087-1091) Dwojak

approved the report. (SER 937-941, 1087-1091) Vreeken and Dwojak expected

the Juvenile Court to read and rely on the contents of the report in making its

decisions. (SER 738, 811-815, 1137, 1330, 1370) The court read and considered

it, and made its decision based on it. (SER 870-873, 1137-1138)

At the February 17, 2000 hearing, referee Bischoff spoke off-the-

record with Vreeken who falsely stated Deanna "missed" the February 13th

visit, and falsely claimed Deanna told the children Cary was trying to take them

away. (SER 586-596, 627-632, 697-700, 733-740, 860-863, 1135-1152) Deanna

did not tell her children their father was trying to take them away from her; and,

the visit hadn't been "missed." (SER 586-596, 627-632, 697-700, 733-740, 788-

791, 860-863, 932-933, 1135-1152) The social workers understood their

position of power and trust with the court, and that it was their word against

Deanna's. (SER 695-698, 827-829) Yet, Vreeken refrained from disclosing to

the court that it was her – not Deanna – who made inappropriate statements to

the children. (SER 741, 1135-1152) Vreeken knew Deanna fully complied with

her obligation to produce the children for the February 13th visit (and visitation

in general), but concealed this fact from the dependency court. (SER 741, 934-

936, 1135-1152) Vreeken and Dwojak admitted that the children were not in

danger by remaining in Deanna's custody. Yet, they kept this exculpatory

information from the dependency court. (SER 696-702, 734-735, 744, 775-779,

836, 858-859, 873, 911-912) Vreeken admitted she failed to disclose that

Deanna met her obligations and did protect and properly supervise her children.

(SER 825-826) Dwojak admitted she never disclosed known false statements by

other social workers to the court. (SER 873) Based on Defendants' fabricated

stories and suppression of facts, the dependency court observed: "it may well be

that you are right and you didn't say these things, but from the evidence I have before me right now, it looks like you are" using these children. (SER 1147-1148) Defendants admitted that the court was moved by their story, and ordered the children's "forthwith" removal. (SER 499, 1148) Vreeken seized Preslie that same day. (SER 597-600, 742) Preslie was traumatized, hiding under a table at the school, very upset; screaming, crying, very frightened. (SER 703-716, 742-743, 842-848)

*8. Vreeken and Dwojak Repeated and Elaborated Their Lies –* The Defendants knew Deanna was a fit and proper parent. (SER 700-701, 743, 811, 829) Nonetheless, Defendants Vreeken and Dwojak repeated their baseless allegations in later amended petitions. (SER 1083, 1101-1102) Vreeken documented the *tall-tale* told on February 17th in a Second Amended Petition, filed February 23, 2000, alleging "[o]n or about February 15, 2000, the mother told children that the father was trying to take them away from her and put the children in a foster home." (SER 1126-1131) This was a lie, and Defendants all knew it. (SER 750-753) Yet, they concealed the fact that it was Vreeken – not Deanna – who threatened the children on February 15, 2000. Instead, they falsely claimed Deanna's statements "have caused the children to be fearful of their father" and made them refuse to visit with or telephone him several times.

11

(SER 1128-1129) Defendants knew their statements were false. (SER 631-634, 687-688, 732-737, 745-747, 877-892)

Vreeken and Dwojak again lied in their Detention Hearing Report which they filed on February 23, 2000. (SER 1092-1098) They reported that continued detention was required due to a substantial danger to the children. (SER 1092-1098) Vreeken and Dwojak knew there was no such danger. (SER 780, 811-815, 818-819, 822-827, 863, 866, 873, 1098) Court reports, and court report addendums, are Defendants' primary method of communicating with the court, and they expect the court to rely on their reports. (SER 501, 903-905)

9. *Preslie's Prolonged Detention and Concomitant Emotional Breakdown* – Preslie was detained from both parents until May 19, 2000. (SER 875) First, she was taken to Orangewood, a temporary children's shelter, where she remained for more than a month. (SER 500, 606-607, 640) Deanna was allowed only supervised visits. (SER 603, 629) Preslie was traumatized, had nightmares, wet the bed. (SER 178-179, 1132-1134)

10. *Defendants Disregarded the Court's Order Authorizing Preslie's Release* – On February 23, 2000, the court authorized Defendants to return Preslie home, but they refused to do so. (SER 753-755, 769-771, 774) They even refused to place Preslie with any other friend or relative no matter

how willing or qualified. (SER 608-611, 643-645, 717, 747-749, 756-764, 791-792, 797-801)

*11. Vreeken Threatened Deanna Saying: "Submit" or Never See Your Kids Again* – Deanna met with Vreeken to discuss getting the children back on March 1, 2000. (SER 755-756, 772) Vreeken angrily threatened Deanna: "If you don't submit to me, you'll never see your kids again." (SER 623-625, 773-774) On March 21, 2000, Vreeken moved Preslie away from family and friends to foster care, where Preslie stayed until May 19, 2000. (SER 500, 502, 611-612) Just before that, Vreeken approached Deanna and told her the "plan." (SER 619-622) Preslie's contact with Deanna was limited. (SER 611-619, 641-642) Dr. Mitchell was very concerned about [Preslie and Kendall's] emotional state" (SER 849-852).

*12. Orange County Refused to Investigate or Reassign Vreeken* – As word of Deanna's predicament spread, family members, friends, and government officials from other municipalities registered concerns with the Agency. The Agency did not investigate allegations or complaints made by Deanna, the Mayor of Irvine and others, and refused to consider Deanna's point of view. (SER 601-602, 732, 781-784, 803-805, 807, 815-821, 893-898, 914-916, 924-926, 1153-1156, 1200-1207) Dwojak ratified Vreeken's conduct. (SER 802-804, 831-834, 836, 847-848, 873, 913)

Dwojak admitted she didn't care what actually happened on February 15th, and never considered removing Vreeken, a friend of many years, from the case. (SER 805-810, 818-819, 909-910) Nobody took Deanna's complaints seriously. (SER 604) The Agency didn't investigate written complaints made by Peter Hermes (Deanna's trial counsel), or Kevin Hardwick (Cary's brother) despite their complaints and concerns having been sent to the upper echelons of the Agency. (SER 604-605, 781-784, 893-898, 914-916, 1153-1156, 1200-1207) Instead of disciplining, or counseling Vreeken for her lies, suppressions, and other misconduct in this matter, all of which the County had knowledge, she was promoted to Supervisor in 2001. (SER 719, 804, 910) The County has never disciplined a worker for any similar such behavior.

## II.   ARGUMENT

### A. Collateral Estoppel Applies to Establish Each of the Required Elements of Each of Preslie's Claims Against Defendants Vreeken, Dwojak, and Orange County

Collateral estoppel is a doctrine which prevents re-litigation of issues previously argued and resolved in a prior proceeding. (*Lucido v. Superior Court*, 51 Cal. 3d 335, 341 (1990)). To apply this principle: (1) the issue must be identical to that decided in the prior proceeding; (2) it must have been actually litigated in the prior proceeding; (3) it must have been necessarily decided in the prior proceeding; (4) the decision must have been final and on the merits; and

(5) the decision must have been against the same person who was a party to the prior proceeding. (*Castillo v. City of Los Angeles*, 92 Cal. App. 4th 477, 481 (2001), citing *Lucido*, supra, 51 Cal.3d 335; see also, *Johnson v. Riverside Healthcare System*, 433 Fed.Appx. 610, 612 (9th Cir. 2011)).[2] Additionally, and especially where collateral estoppel is applied "offensively," courts consider whether the party against whom the earlier decision is asserted had a "full and fair" opportunity to litigate the issue. (*Roos v. Red*, 130 Cal. App. 4th 870, 880 (2005).) Collateral estoppel is used offensively when, as here, "plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." (*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). The Court should apply the doctrine here to establish all elements of Preslie's liability claims against Defendants.

### i. *The Requisite Elements of Collateral Estoppel Are Met With Regard to Vreeken, Dwojak, and Orange County*

Defendants cannot dispute that 1) there has already been a lengthy trial in a related case involving the same operative facts and the same [Defendants]; 2) during the course of that case substantial evidence was developed through the discovery process, and was admitted at trial; and, 3) the resultant jury verdict in

---

[2] More recently, in 2012, the 9th Circuit upheld the preclusive effect given prior state court judgments in federal civil rights actions in federal courts. (*White v. City of Pasadena*, 671 F.3d 918, (9th Cir. 2012)). This is not a new twist on the law. (*Allen v. McCurry,* 449 U.S. 90 (*1980*))

favor of Deanna Fogarty-Hardwick is final. (SER 1-25, 123-176, 181-478) The issues raised in Preslie's Complaint are identical to those previously litigated to conclusion by Deanna Fogarty-Hardwick. (SER 1255-1278, AER 2237-2323) The Defendants can produce no evidence that any defense they wished to try could not have been tried in the prior proceedings (including multiple appeals). The impact of Defendants' misconduct on Preslie's right to familial association with her mother was also identical to the impact it had on her mother's right, i.e., Preslie was separated from Deanna for a very long time.

Therefore, collateral estoppel bars the affirmative defenses which Defendants raised in the previous action, and lost, as well as those they could have raised, and did not; and, the elements of Preslie's liability case against these Defendants are conclusively established under the doctrine of collateral estoppel.

### ii. Issues Already Adjudicated in Deanna Fogarty's Earlier Case as to Which Collateral Estoppel Should Apply

To succeed on her §1983 claims Preslie must show that (1) the conduct complained of was committed by a person "acting under color of state law;" and (2) "this conduct deprived [Preslie] of rights, privileges, or immunities secured by the Constitution or laws of the United States." (*Tichinin v. City of Morgan Hill*, 177 Cal. App. 4th 1049, 1062 (2009); see also, *Catsouras v. Department of California Highway Patrol*, 181 Cal. App. 4th 856, 890 (2010), ["By the plain

terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege the person who has deprived him of the right acted under color of state or territorial law."].)

The first element of Preslie's claim is not only established by the prior jury verdict, but is also a foregone conclusion which no one disputes. Vreeken and Dwojak were at all times acting under color of law. This fact is established both by Defendants' pre-trial admissions in Deanna's case, and by the jury's verdicts. The second element is also established.

### iii. *The Misdeeds of the Individual Defendants Deprived Preslie of a Fundamental Constitutional Right*

A *fundamental* concept of our American system of justice is that those charged with upholding the law are prohibited from deliberately fabricating evidence. (*Limone v. Condon*, 372 F.3d 39, 44-55 (1st Cir. 2004); see also, *Devereaux v. Perez*, 218 F.3d 1045, 1052, 1059 (9th Cir. 2000); citing *Anderson v. Creighton*, 483 U.S. 635, 648 (1987)). The right to familial association is also protected by the Due Process Clause of the Fourteenth Amendment. (*Troxel v Granville* , 530 US 57, 63 (2000); *see also*, *Rosenbaum v. Washoe County*, 2011 U.S. App. LEXIS 17460 (9th Cir. 2011)).

Marcie Vreeken lied to a juvenile dependency judge on February 15, 2000. Those lies triggered the "forthwith" removal and detention of Preslie

Hardwick from her mother's care. Then, consistent with Orange County's standard operating procedures, on February 23, 2000, Vreeken made her lies 'official' by reiterating them in her reports to the court. (SER 29-31, 211-212) Vreeken, with the assistance and support of her supervisor, Helen Dwojak, then pressured the children and their mother in an effort to obtain evidence to support the removal. (SER 208-210)

Later, Vreeken and Dwojak fabricated evidence and withheld exculpatory evidence from the juvenile court. Thus ensuring Preslie would not be returned to her mother's care for a very, very long time. (SER 208-210) Deanna was awarded $4.9 million in damages arising from the misconduct of these social workers and the unconstitutional customs, usages, policies, and practices of Orange County. (SER 34-35) Judge Bauer was so "taken aback" by the egregiousness of Defendants' misconduct that he entered an injunction against Orange County. The Court of Appeal affirmed the judgment, except for the injunction. (SER 60, 299, 378-379, 477-478)

According to the special verdicts returned in Deanna's case, the jury concluded that 1) Vreeken and Dwojak violated Deanna's rights of familial association and privacy; 2) that Vreeken and Dwojak violated Deanna's rights while acting or purporting to act in the performance of their official duties; and 3) that Vreeken and Dwojak acted with malice, oppression, or fraud. (SER 6-7,

10-16, 19-20)

## A. Defendants Are Not Entitled to Qualified Immunity

In *Baker v. County of Los Angeles*, the Central District of California (CV

11-5550-GHK, Docket #28), recently ruled on a motion for summary judgment

involving claims of judicial deception by parents against Los Angeles County

CPS social workers, succinctly summarizing the relevant law:

> The standard for a § 1983 claim based on judicial deception is set
> forth by *Franks v. Deleware*, 438 U.S. 154 (1978). *Liston v. County of
> Riverside*, 120 F.3d 965, 972 (9th Cir. 1997) ("The *Franks* standard,
> although developed in a criminal context, also defines the scope of
> qualified immunity in civil rights actions.") (internal quotation marks
> and citations omitted). To prevail on their judicial deception claim,
> Plaintiffs must (1) make a "substantial showing" that the defendant
> made misrepresentations or omissions that were "deliberate
> falsehoods or demonstrated a reckless disregard for the truth," and (2)
> establish that but for the dishonesty, the challenged action would not
> have occurred. *Beltran v. Santa Clara County*, 389 F. App'x 679, 680
> (9th Cir. 2010)… To resolve this Motion, therefore, we need only
> consider whether the juvenile court would have released [the children]
> but for the alleged misrepresentations and omissions. (Id. at p.14)

Likewise, this Court need only determine "whether the juvenile court

would have released Preslie but for the alleged misrepresentations and

omissions." (*Id.*)[3] Here, given that the juvenile court judge expressly said as

---

[3] While ordinarily a two-step inquiry under *Saucier*, the 9th Circuit has long held
that the two questions "intertwine" in cases of this nature, saying that the
"merger is ultimately appropriate because, as *Branch* and *Hervey* recognize, no
reasonable officer could believe that it is constitutional to act dishonestly or
recklessly with regard to the basis for probable cause in seeking a warrant."
*Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002), citing *Branch v. Tunnell* ,

much, (SER 861-863, 1135-1152) the conclusion is inescapable and the appeal should be denied.

### i. Constitutional Rights May Be Clearly Established by State Court Decisions, Unpublished Trial Court Decisions, Agency Training, and Common Sense

Defendants' argument that the law was not clearly established suffers two fatal flaws. First, as argued extensively in Plaintiff's Motion for Summary Adjudication below, the defense is barred by the doctrine of collateral estoppel because Appellants already had a full and fair opportunity to make the argument, and they lost. Repeatedly. [See "Summary of The Claims and Results in Deanna's Related Case" and "Litigation History in Deanna's Related Case" sections hereinabove] Second, Defendants' attempts to imbue uncertainty into the law notwithstanding, the 9th Circuit expressly limited its holding in *Costanich v. Department of Social and Health Services,* 627 F.3d 1101 (9th Cir. 2010) to "the context of proceedings adjudicating a foster care license and termination of guardianship" (*Id*. at 1108) which has nothing to do with *this* case.

In assessing a defendant's claim to qualified immunity this Court must use its full knowledge of its own and other relevant precedents. (*Elder v.*

---

937 F.2d 1382, 1383 (9th Cir. 1991), and *Hervey v. Estes*, 65 F.3d at 788-89. Nevertheless, Plaintiff will address both inquiries herein.

*Holloway,* 510 U.S. 510, 516 (1994)). Precedent directly on point is *not* necessary. (*Devereaux v. Abbey,* 263 F.3d 1070, 1075 (9th Cir.2001).) A constitutional rule already identified in decisional law may apply with *obvious clarity* to the specific conduct in question, even though that exact conduct has not previously been held unlawful. (*United States v. Lanier,* 520 U.S. 259, 271 (U.S. 1997); emphasis added.)[4]

Even where no closely analogous case law exists, a right can be clearly established on the basis of "common sense." (*Giebel v. Sylvester,* 244 F.3d 1182, 1189 (9th Cir. 2001).) If the rule were otherwise government agents "would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct." (*Drummond v. City of Anaheim,* 343 F.3d 1052, 1060 (9th Cir. 2003).) Appellee trusts the Court will agree that "published authoritative binding authority" isn't necessary (though Plaintiff offers plenty) when "common sense" precludes Appellants' argument that they didn't know

---

[4] To be established clearly, however, there is no need that "the very action in question [have] previously been held unlaw-ful." *Wilson v. Layne,* 526 U. S. 603, 615 (1999). The unconstitutionality of outrageous conduct obviously will be unconstitutional, this being the reason, as Judge Posner has said, that "[t]he easiest cases don't even arise." *K. H. v. Morgan*, 914 F. 2d 846, 851 (CA7 1990). But even as to action less than an outrage, "officials can still be on notice that their conduct violates established law . . . in novel factual circumstances." *Hope v. Pelzer*, 536 U. S. 730, 741 (2002)

lying to the juvenile court was wrong.[5]

### ii. Preslie's Right to Be Free From Judicial Deception Was Clearly Established

The Fourth Amendment guarantees individuals the right to be secure in their persons against unreasonable seizures by government officials. This right extends to children. (*See, Wallis ex rel. Wallis v. Spencer,* 202 F.3d 1126, 1136 (9th Cir. 2000); see also, *Rogers v. County of San Joaquin,* 487 F.3d 1288, 1294 (9th Cir. 2007).)

### iii. Appellants Do Not Contest They Deceived the Juvenile Court

There is no triable issue on this point. Nor is there any contention that Appellants *did not* continue to deceive the court during the entire course of the

---

[5] Defendants artfully use quotation marks to attempt to mislead the Court. Nowhere does *Saucier* set forth a requirement that "a Section 1983 plaintiff must point to published, dispositive case law that states 'a clearly established rule…'" (AOB at 23). Nor does *Sheehan*. (AOB at 23) Likewise, the Supreme Court did not hold that "[o]ut of jurisdiction authority is not enough to "clearly establish" the law in a public employee's forum jurisdiction. In *Wilson v. Layne*, a case about media a ride-along and entry into a home during execution of a warrant, did not actually state a requirement that binding precedent is required, but rather found that, given the lack of such authority in that case, combined with a difficult issue over which there was a significant "split among the Federal Circuits" that the law was not clearly established. Here, there is no such split, nor is there a split over a difficult issue; lying to juvenile court judges is wrong, and any reasonable officer would know it today, yesterday, and in February 2000.

dependency proceedings.[6]

### iv. Appellants' Judicial Deception Violated Preslie's Fourth Amendment Rights Against Unwarranted Seizure

Appellants cannot reasonably argue that their misconduct was constitutionally permissible. A seizure pursuant to a court order obtained by judicial deception is unconstitutional. (*Whitaker v. Garcetti,* 486 F.3d 572, 581 (9th Cir. 2007); *Greene v. Camreta,* 588 F.3d 1011, 1035 (9th Cir. Or. 2009); *Snell v. Tunnell,* 920 F.2d 673 (10th Cir. 1990). Thus, the first prong of the *Saucier v. Katz,* 533 U.S. 194, 201 (U.S. 2001), test is satisfied. Ironically, the very case upon which Appellants base their argument that the law was not clearly established, *Costanich* (*supra*), held that "deliberately fabricating evidence in civil child abuse proceedings violates the Due Process clause of the Fourteenth Amendment when a liberty or property interest is at stake." (Id. at 1108) Here, unlike in *Costanich*, a liberty interest is indisputably at stake.

The purpose of qualified immunity is to protect all but the plainly incompetent or those who knowingly violate the law. Hence, the next question is whether or not the right implicated was clearly established at the time of the

---

[6] Instead, Defendants weakly argue that because they didn't request the removal order that they "triggered" therefore they did not deceive the juvenile court. (AOB FN12, page 40). The simplicity of the "but for" test provided for in *Franks*, discussed *infra*, demonstrates the flaw with this argument. Plaintiff suspects that this is why Defendants relegated the argument to a footnote.

constitutionally offensive events. (*Saucier v. Katz*, 533 U.S., *supra*, at 202.)

### v. Preslie's Right Not to Be Seized and Detained Based on Judicial Deception Was Clearly Established Before February 17, 2000

The Fourth Amendment right to be free from the knowing presentation of

false evidence in obtaining "a court order permitting the seizure of a child" has

been clearly established since 1990. (See, *Greene v. Camreta,* 588 F.3d 1011,

1035 (9th Cir. Or. 2009); citing *Snell v. Tunnell,* 920 F.2d 673 (10th Cir. 1990);

holding social workers who deliberately fabricated evidence of child sexual

abuse to secure a removal order are not entitled to qualified immunity.)

*Greene v. Camreta,* 588 F.3d, *supra*, at 1035, concluded the right to "be

free from judicial deception" in obtaining a removal order was clearly

established.[7] In doing so, the Court conducted an exhaustive analysis of closely

analogous case law:

> In *Devereaux v. Perez,* 218 F.3d 1045 (9th Cir. 2000), for example, we
> held in the context of a child abuse proceeding that 'the constitutional
> right to be free from the knowing presentation of false or perjured
> evidence' is clearly established. *Id.* at 1055-56. Even earlier, we stated
> emphatically that 'if an officer submitted [. . .] statements he knew to
> be false or would have known were false had he not recklessly
> disregarded the truth, . . . he cannot be said to have acted in an

---

[7]As mootness frustrated Camreta's ability to challenge the Ninth Circuit's ruling that he must obtain a warrant before interviewing a suspected child abuse victim at school, that part of the decision was vacated. (*Camreta v. Greene,* 131 S. Ct. 2020, 2025 (U.S. 2011).) The rest of the decision, *i.e*., Section II.C., remains intact: "Consistent with the Supreme Court's instructions, we VACATE Section II.A. of our opinion" (*Greene v. Camreta,* 661 F.3d 1201 (9th Cir. Or. 2011).)

objectively reasonable manner, and the shield of qualified immunity is lost.' *Hervey v. Estes,* 65 F.3d 784, 788 (9th Cir. 1995)[]; see also *Butler*, 281 F.3d at 1024; *Whitaker*, 486 F.3d at 582 (concluding that 'the contours of the Fourth Amendment right against judicial deception' were clearly established by 1996). See also *Snell v. Tunnell*, 920 F.2d 673 (10th Cir. 1990) (holding social workers who deliberately fabricated evidence of child sexual abuse to secure a removal order not entitled to qualified immunity). [8]

Following the same analysis as in *Greene v. Camreta,* the law governing these Appellants' misconduct here was also "clearly established" at least as early as 1990, well before the February 2000 events at issue herein. (See, e.g., *Snell v. Tunnell*, 920 F.2d 673.) Thus the second prong of the *Saucier v. Katz* test is satisfied.

The only case defendants cite in this section of their brief where the court held the law was NOT clearly established was *Costanich*. Defendants' reliance on *Costanich* is misplaced for at least two reasons, each of which is fatal to their argument.

First, as discussed elsewhere, the decision in *Costanich* was more limited than Defendants suggest. The *Costanich* panel noted that it declined to decide

---

[8]See also, *Butler v. Elle,* 281 F.3d 1014, 1024 (9th Cir. Idaho 2002), "As we said in *Hervey v. Estes,* 65 F.3d 784, 788-89 (9th Cir. 1995) (quoting *Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991), "'if an officer submitted an affidavit that contained statements he knew to be false or would have known to be false had he not recklessly disregarded the truth . . ., he cannot be said to have acted in an objectively reasonable manner, and the shield of qualified immunity is lost.'"

whether a protected liberty interest was at stake, referring to the plaintiff's foster

care license and guardianship of the seized children. At least one court

described the holding in *Costanich* as:

> The *Costanich* court noted that depriving a person of employment by
> deliberately fabricating evidence could, in some circumstances, make
> out a claim for a violation of substantive due process. However, the
> court also noted, "before turning to the question of whether
> Costanich's due process rights were violated, we must first determine
> whether there has been a deprivation of life, liberty, or
> property." *Id.* at 1110. In *Costanich,* the state revoked the plaintiff's
> foster case license, *id.* at 1103, which tracks the language of
> *Engquist* that a substantive due process claim can result "if the
> government had yanked the license of an individual in an occupation
> that requires licensure." (internal citations omitted)

Here, on the other hand, a liberty interest is undisputedly, indisputably at

stake. Indeed, care, custody, companionship of a child (and the reciprocal right

of the child) is liberty interest long recognized in American jurisprudence as

"essential," (*Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed.

1042 (1923)), "basic civil rights of man," (*Skinner v. Oklahoma*, 316 U.S. 535,

541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942)), "far more precious . . . than

property rights," *May v. Anderson*, 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97

L.Ed. 1221 (1953); (*Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 U.S.Ill.

1972 – citing *Meyer, Skinner, May*) and "fundamental," (*Santosky v. Kramer*,

455 U.S. 745, 754, 102 S.Ct. 1388)

Ironically, in this case about deceiving the court, Defendants take liberties

with the authorities they offer.  Defendants quote the *Costanich* panel as saying:

> because we conclude that the right not to be accused based on
> deliberately falsified evidence during civil investigations which could
> result in the [custodial removal of children] was not clearly
> established when the conduct at issue in this case occurred, we affirm
> the district court's grant of summary judgment on the basis of
> qualified immunity. (AOB at 32)

However, the *Costanich* panel actually said "…which could result in the

deprivation of protected liberty or property interests…" [emphasis added].  Just

as Plaintiff urges this Court to distinguish *Costanich* from *Greene* and other

cases cited by the parties based on the nature of the right at issue, Defendants

urge this Court to ignore the very same distinction.  Defendants' attempted

slight-of-hand is very telling.

Second, at the time of Defendants' deception of the juvenile court in

February 2000, clearly established law prohibited deception of a juvenile court

judge resulting in the seizure children from their biological, custodial parent.

Ten years after Defendants deceived the juvenile court resulting in Plaintiff's

removal from her mother, *Costanich* held that allegedly deceiving an

administrative law judge regarding a foster care license was not clearly

established.  As Defendants point out, "Post-incident decisions are valueless in a

qualified immunity analysis." (AOB p35).  Thus, *Costanich* is "valueless" to

muddy the waters as Defendants suggest.

Plaintiff's suggestion that any apparent discrepancy between *Costanich*

27

and *Greene* can be explained by exploring the differences in the nature of the right violated (custody of biological children vs. foster care license), and where they fit on a theoretical hierarchy of rights, rather than the conduct of the defendant (judicial deception), finds support in a 2009 decision.  In *Burke v. County of Alameda*, 586 F.3d 725 (9th Cir. 2009) this court found a triable issue of material fact precluded summary judgment on the issue of whether a warrantless removal of a child violated the parents' right to due process, but found that the law was not clearly established in the particular context of the case.  Specifically, the Court noted that the father, who had legal but not physical custody and did not live with the mother and his child, had a "reduced liberty interest in the companionship, care, custody…" of his child, though he was "not without *any* interest" in same.  (*Id*. at 733-734) The Court granted qualified immunity, holding (after noting that "it is not necessary that the alleged act be 'previously declared unconstitutional'), that it would not have been clear to the defendant that his conduct was clearly unlawful.  (*Id*.)

### vi.  *Appellants' Lies Were Material*

To support a § 1983 claim of judicial deception, a plaintiff must show that the Defendant deliberately or recklessly made false statements or omissions that were material to the juvenile court's decision. (See, e.g., *KRL v. Moore,* 384 F.3d 1105, 1117 (9th Cir. Cal. 2004).) The knowing presentation of false

evidence is material "if there is any reasonable likelihood that the false testimony could have affected the judgment. . ." (*Hamilton v. Ayers,* 458 F. Supp. 2d 1075, 1113 (E.D. Cal. 2006).)

Defendants only meet their "burden of showing that a cause of action has no merit if they show "that there is a complete defense to that cause of action." (*Aguilar v. Atlantic Richfield Co.,* 25 Cal. 4th 826, 850-851 (2001).) Here, Defendants cannot meet that burden, as it is clearly established that their use of judicial deception to obtain the February 17, 2000, order to seize Preslie was unconstitutional. The appeal must be denied. (*Consumer Cause, Inc. v. Smilecare,* 91 Cal. App. 4th 454, 468 (2001).)

Defendants misrepresented facts to the court on February 17, 2000 and thereafter, in their court reports, and verbally both on and off the record. The court transcript of the hearing on February 17, 2000 sets out the basis for the juvenile court's decision to seize the children in sufficient detail to show Defendants' lies were material. (SER 698-700, 733-741, 861-863, 1137-1140, 1147, 1331-1334, 1354) The juvenile court expressly stated that it "read and considered" Vreeken's and Dwojak's written report; and, that he spoke with Vreeken off the record regarding the falsely alleged "missed visit" of February 13th, and Deanna's falsely-alleged statement to the girls. (SER 698-700, 733-741, 861-863, 1137-1140, 1147, 1331-1334, 1354) Vreeken's deposition and

trial testimony reveals what information she did, and did not, reveal to

Commissioner Bischoff. (SER 687, 698-700, 733-747, 858-869, 1137-1138,

1147, 1331-1334, 1352-1369, 1379, 1386) The information imparted to the

Commissioner "triggered" him to order Preslie seized. (SER 862-863) The

evidence presented to the Commissioner was material. (See, *Hamilton v. Ayers*,

458 F. Supp. 2d, *supra*, at p.1113.)

### vii. *Preslie's Fourteenth Amendment Right to Familial Association Was Clearly Established Prior to February 17, 2000*

Defendants do not contend that Preslie did not have a constitutionally

protected right to "familial association" with her mother, nor could they. Parents

and children have a well-elaborated constitutional right to live together without

governmental interference. (*Santosky v. Kramer,* 455 U.S. 745, 753, 71 L. Ed.

2d 599, 102 S. Ct. 1388 (1982); *Stanley v. Illinois,* 405 U.S. 645, 31 L. Ed. 2d

551, 92 S. Ct. 1208 (1972); *Pierce v. Soc'y of Sisters,* 268 U.S. 510, 534-35, 69

L. Ed. 1070, 45 S. Ct. 571 (1925); *Meyer v. Nebraska,* 262 U.S. 390, 67 L. Ed.

1042, 43 S. Ct. 625 (1923). The right is an essential liberty interest protected by

the Fourteenth Amendment's guarantee that parents and children will not be

separated by the state without first obtaining a warrant except in an emergency.

(*Wallis v. Spencer,* 202 F.3d 1126, 1136 (9th Cir. 2000).) Defendants argue that

*Costanich* broadly applies to all forms of judicial deception in civil proceedings.

They are incorrect; *Costanich* is distinguishable.

### viii. *Costanich Does Not Apply to Preslie's Claims That the Order to Seize Her Was Obtained by Judicial Deception*

In *Costanich*, the plaintiff sued DSHS officials claiming they violated her Fourteenth Amendment *substantive* due process rights by depriving her of liberty and property interests in her foster care license and dependency guardianship of two minors she fostered. (*Costanich*, 627 F.3d, *supra*, at 1107.) The Ninth Circuit held that the right to be free from the deliberate fabrication of evidence "was not clear [in 2001] …applied in the context of proceedings adjudicating a foster care license and termination of guardianship[.]" (*Id*. at 1108.) The *Costanich* Court did not conduct *any* analysis relevant to the due process rights violated when social workers seek to obtain an order to seize a child from its biological parent by fraudulent means.

*Costanich* is readily distinguished from the Ninth Circuit's opinion in *Greene v. Camreta,* 588 F.3d 1011, 1034 (9th Cir. 2009). In *Greene*, rather than addressing the more general right to remain free of judicial deception foster care licensing cases, the Ninth Circuit observed that the right to be free from judicial deception as applied specifically to securing removal orders is "clearly established." (*Id.*, at 1035) There is an obvious distinction between these two cases, and it is found in the nature of the rights and context specifically addressed. *Greene* is more closely analogous to the facts presented here, so the court should apply *Greene's* reasoning and find Preslie's Fourteenth

Amendment right to remain free of "unwarranted" intrusions on her familial association rights.

### ix. The State Appellate Court Has Already Determined That These Social Workers Are Not Entitled to Qualified Immunity

Here, the Fourth District Court of Appeal has already specifically found that qualified immunity does not apply to the exact conduct at issue here: "In [*Fogarty-Hardwick v. County of Orange et al.*], the jury specifically concluded that Vreeken and Dwojak lied, falsified evidence, and suppressed exculpatory evidence – all of which was material to the dependency court's decision to deprive Fogarty-Hardwick of custody – and that they did so with malice. These findings are clearly sufficient to satisfy the Supreme Court's definition of circumstances in which 'qualified immunity would *not* be available.'" (SER 1-60, *Fogarty-Hardwick v. County of Orange,* 2010 Cal. App. Unpub. LEXIS 4436 (Cal. App. 4th Dist. June 14, 2010); citing *Harlow v. Fitzgerald,* 457 U.S. 800, 815 (1982).) The District Court agreed, granting Plaintiff's request for summary adjudication as against the qualified immunity defense.

The Supreme Court has consistently held that the government's knowing use of false or perjured testimony and/or the deliberate suppression of exculpatory evidence violates due process. (See e.g., *Napue v. Illinois* 360 U.S. 264, 269 (1959); *Pyle v. Kansas* 317 U.S. 213, 216 (1942); *Mooney v. Holohan* 294 U.S. 103, 112 (1935).) These precepts are not limited to criminal

prosecutions. The right to not be lied about by government agents is "virtually self evident." (*Devereaux v. Abbey*, *supra*, 263 F.3d at 1075.) While government officials are not required to anticipate developments in the law, they are expected "to relate established law to analogous factual settings." (*Snell v. Tunnell,* 920 F.2d 673, 699 (10th Cir.1990).)

Thus, the "common sense" and "self evident" nature of Preslie's right to be free from the use of deception by social workers in the juvenile dependency context was sufficiently obvious in February of 2000, to have put these Defendants on notice that their dishonest acts violated Plaintiff's rights.

## B.   Absolute Immunity Does Not Apply

Appellants claim entitlement to absolute immunity because they are akin to prosecutors, yet proffer no evidence to suggest they satisfied a "prosecutorial" function in Plaintiff's case. Regardless, there is a presumption that qualified, rather than absolute, immunity is sufficient to protect officials in the exercise of their duties. (*Miller v. Gammie,* 335 F.3d 889, 897 (9th Cir. 2003).)[9] Thus, the scope of absolute immunity for social workers is extremely narrow. (*Id*. at 898).

---

[9]In *Miller v. Gammie*, 335 F.3d 889, *supra*, at p. 897, the court expressly overturned *Babcock v. Tyler*, 884 F.2d 497 (9th Cir.1989), and limited *Coverdell v. Department of Social & Health Services,* 834 F.2d 758 (9th Cir. 1987) as stated in *Beltran v. Santa Clara County,* 491 F.3d 1097, 1101 (9th Cir. Cal. 2007).  Plaintiff also suggests that *Meyers v. Contra Costa County Dep't of Social Services*, 812 F.2d 1154 (9th Cir.1987), conflicts with *Miller*, applying absolute immunity too broadly.

### i. *Appellants Are Sued Based on Their Investigatory and Reporting Functions*

Child welfare workers investigating claims of child abuse are analogous to law enforcement officers who are entitled only to qualified immunity. (*Snell v. Tunnell,* 920 F.2d 673, 691 (10th Cir. 1990) In *Beltran v. Santa Clara County,* 514 F.3d 906, 908 (9th Cir. 2008), the Ninth Circuit held a social worker would only be entitled to absolute immunity, if at all, for the "decision" to institute dependency proceedings. Nor are they entitled to absolute immunity from claims that they fabricated evidence during an investigation, or made false statements in a warrant affidavit. (*Ibid*.) More recently, the Ninth Circuit has reiterated that "social workers are not afforded absolute immunity for their investigatory conduct, discretionary decisions *or* recommendations." (*Tamas v. Dep't of Soc. & Health Servs.,* 630 F.3d 833, 842 (9th Cir. 2010).)  Prosecutors and others investigating criminal matters have no absolute immunity for their investigatory conduct, *a fortiori*, social workers conducting investigations have no such immunity.  (*Costanich v. Dep't of Soc. & Health Servs.,* 627 F.3d 1101, 1109 (9th Cir. 2009).)

Here, the social worker Defendants are *not* being sued for their "decision" to initiate any dependency proceedings.  The evidence demonstrates that Defendants didn't play *any* role in the "initiation" of the dependency case, but only participated in later events. (SER 870-876, 1295, 1298-1300, 1305, 1316,

1320-1321, 1310-1311, 1403-1404) Moreover, the evidence shows the County was represented at the February 17, 2000, hearing by an attorney, *not* by a social worker. (SER 749-751, 857-861, 864-865) At all times during the case, County Counsel fulfilled the role of "prosecutor," and Defendants were merely investigators. (SER 1295, 1299, 1410-1412) Thus, prosecutorial immunity cannot apply.

Defendants' witness immunity argument based on *Briscoe v. Lahue,* 460 U.S. 325, 328 (1983) must also fail. Plaintiff does not sue because of Defendants' "testimony" on March 31, 2000. The focus of Plaintiff's suit is on:

1)     The false statements and omissions made in Defendants' Court Reports continuously submitted by Defendants from February 17, 2000 through the termination of the dependency proceedings;

2)     The statements made by social workers during an "off the record" discussion on February 17, 2000 and an on the record discussion that same day where the social workers lied to Judge Bischoff (but not while under oath), triggering Plaintiff's seizure;

3)     The fabrication of evidence throughout the dependency proceedings and repeated suppression of exculpatory evidence in Defendants' written court reports; and

4)     Defendants' recommendations that Preslie continue to be detained

even though Defendants knew they were lying to the court about the basis for the initial seizure and detention, among other things.

Testimonial immunity does not encompass these non-testimonial acts. (*Marsh v. San Diego County,* 432 F. Supp. 2d 1035, 1050 (S.D. Cal. 2006); citing *Cunningham v. Gates,* 229 F.3d 1271, 1291 (9th Cir. 2000) ("Obviously, testimonial immunity does not encompass non-testimonial acts such as fabricating evidence.")

## V. CONCLUSION

There is no immunity whatsoever for acts of judicial deception akin to those complained of here – as a matter of law, and Defendants would have known this in February 2000, and thereafter based on clearly established principals of law and basic "common sense." Social services agents are *not* the equivalent of 'prosecutors' in their investigations, reporting activities, and recommendations. Even if they were, it is well established that prosecutors lose their immunity when they deceive the courts.  Finally, Defendants have already lost.  Repeatedly.  The Court should deny this appeal in its entirety.

Dated: January 22, 2016                                    __/s/ Robert R. Powell_____
                                                                        ROBERT R. POWELL, ESQ.
                                                                        Attorney for Plaintiff

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, **PLAINTIFF/APPELLEE**

**PRESLIE HARDWICK** is unaware of any related cases pending before this

Court.


Dated: January 22, 2016          ___/s/ Robert R. Powell_____
         ROBERT R. POWELL, ESQ.
         Attorney for Plaintiff

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. 32(A)(7)(C) AND</u>

## <u>CIRCUIT RULE 32-1</u>

I certify that the foregoing **PLAINTIFF/APPELLEE PRESLIE HARDWICK'S ANSWERING BRIEF** is double spaced and utilizes a proportionately-spaced 14-point Times New Roman typeface, and comprises a total of 7,765 words, as calculated by the Microsoft Word 2007 word processing system, the means by which it was prepared.

Dated: January 22, 2016        __/s/ Robert R. Powell_____
                                      ROBERT R. POWELL, ESQ.
                                      Attorney for Plaintiff

9th Circuit Case Number(s)   15-55563

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)   January 22, 2016   .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)   /s/ Robert R. Powell

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)   .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)